THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PHYLLIS J. ZORN<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF MARION, et al.,<br><br>　　　　Defendants. | Case No. 2:24-CV-02044-DDC-TJJ |

**DEFENDANTS JEFF SOYEZ, AARON CHRISTNER, AND THE MARION COUNTY BOARD OF COUNTY COMMISSIONERS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff's Complaint is full of scandalous allegations against Marion Police Chief Gideon Cody, culminating in allegations that he abused his power to obtain and execute an illegal search warrant for the seizure of Plaintiff's electronic devices in violation of her First and Fourth Amendment rights. But Cody is not the only party Plaintiff seeks to hold liable for her alleged damages. She has also sued Marion County Sheriff Jeff Soyez, Detective Aaron Christner, and the Marion County Board of County Commissioners ("BOCC"). But the Complaint lacks allegations that would subject those defendants to any liability. For starters, Plaintiff completely fails to allege any form of municipal liability, and therefore, claims against the BOCC and Soyez in his official capacity must be dismissed. As for the claims against Soyez and Christner in their individual capacities, as set forth herein, Plaintiff does not adequately allege that they violated her constitutional rights, nor does she allege violation of any clearly established rights.  And so, they are entitled to qualified immunity.

For these reasons, Defendants the BOCC, Sheriff Soyez, and Detective Christner respectfully request that the claims against them be dismissed with prejudice.

**FACTUAL BACKGROUND**[1]

Jeff Soyez is the Sheriff of Marion County, and Aaron Christner is one of his detectives. (Doc. 1, ¶¶ 5-6). The Marion County Record ("the Record") is the local newspaper in Marion, and Phyllis Zorn is one of its reporters. (Doc. 1, ¶ 1). The Complaint asserts that City of Marion Police Chief Gideon Cody was hostile to the Record because it was investigating his background. (Doc. 1, ¶¶ 9-21). The Complaint does not allege that Soyez or Christner had any similar animus against Plaintiff or the Record.

On August 1, a Marion resident, Kari Newell, asked Cody to trespass Plaintiff and the Record's editor, Eric Meyer, from her property. (Doc. 1, ¶¶ 17-21). The next day, Plaintiff received a message from Pam Maag asserting that Newell had been illegally driving with a suspended license. (Doc. 1, ¶ 22). Maag also sent Plaintiff a letter that the Kansas Department of Revenue ("KDOR") had sent to Newell. (Doc. 1, ¶ 24). The letter contained Newell's private identifying information. (Doc. 1, ¶ 25). Meyer and Plaintiff each went to KDOR's website and utilized Newell's private identifying information to access her driving information and confirm that her license was in fact suspended. (Doc. 1, ¶¶ 26-34). The Record did not publish the information about Newell's license but did email it to Cody and Soyez. (Doc. 1, ¶¶ 40-41). That information was also provided to a City Council member, which resulted in a lively City Council Meeting. (Doc. 1, ¶¶ 44-45, 51-52, 57-57). The Complaint asserts, in conclusory fashion, that following the City Council Meeting, Cody "coordinated" an investigation with Soyez, but provides no facts regarding this coordination or Soyez's involvement in any investigation. (Doc. 1, ¶ 58).

Cody requested that Christner obtain a preservation warrant for the Record's internet provider. (Doc. 1, ¶ 61). Christner informed Cody he did not have the authority to do so. Instead, he

---

[1] Because this is a motion under Rule 12(b)(6), well-pleaded facts are taken as true. The County Defendants' recitation of facts focuses primarily on the allegations relating to the claims against them.

suggested that if Cody had probable cause for a search warrant, then he should apply for one. (Doc. 1, ¶ 62). The next day, Christner emailed Cody a draft of a search warrant application. In the email, Christner wrote to Cody:

> I attached a draft for a SW. I am not comfortable swearing to an affidavit that I did not do the investigation on. I left my training and experience in red so you can change it to yours. Let me know what you think.

(Doc. 1, ¶ 63; Ex. A, August 9, 2023 Email from Christner to Cody).[2] On August 10, 2023, Cody used Christner's form to draft a search warrant applications for the Record. (Doc. 1, ¶ 64). The application and warrant for the Record was signed by Magistrate Judge Laura Viar, on August 11, 2023. (Search Warrant, Ex. B).[3] That same day, "spearheaded" by Cody, a team of law enforcement officers, including Christner, executed the signed warrant on the Record. (Doc. 1, ¶ 74, 76).

The signed warrant stated there was probable cause that evidence of violations of K.S.A. 21-6107, identify theft, and K.S.A. 21-5839, unlawful acts concerning computers, would be uncovered in the search. (Ex. B). And the warrant commanded that Cody, "or any peace officer in the State of Kansas," conduct a search under numerous parameters. Relevant to Plaintiff's claims, it called for "a preview search of all located digital communications devices and digital storage media to exclude from seizure those which have not been involved in the identity theft, by use of manual or automated preview tools."

During the execution of the warrant, Christner used a software called osTriage to conduct a keyword preview search. (Doc. 1, ¶¶ 79-80). The Complaint makes the conclusory allegation that the preview search was a "sham," because the terms were overly broad and resulted in 100% false hits. (Doc. 1, ¶ 82). Christner's preview search took approximately an hour and twenty minutes. (Doc. 1, ¶

---

[2] In deciding a motion under Rule 12(b)(6), the Court can consider documents referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity. *Uhlig v. CoreLogic, Inc.*, 2023 U.S. Dist. LEXIS 111854, at *6, n. 2 (D. Kan. June 28, 2023).
[3] The Search Warrant is also referred to in the Complaint and is central to plaintiff's claim.

92). Cody later spoke to Soyez about the search, and then Cody told Soyez they would "just take them all." (Doc. 1, ¶ 93). After the items were seized, Cody went to the Sheriff's Office and talked with Soyez. (Doc. 1, ¶ 107).

On August 16, Marion County Attorney Joel Ensey filed a motion to release the evidence that had been seized. (Doc. 1, ¶ 110). Most of the items were returned that same day. (Doc. 1, ¶ 113). On August 29, 2023, the last items were returned. (Doc. 1, ¶ 115). Aside from the preview searches referenced above, there is no allegation that any searches were performed of the computers or phones that were seized. Plaintiff has now filed suit, claiming that her First and Fourth Amendment rights were violated. (Doc. 1, ¶¶ 119-121). Plaintiff also claims that Soyez failed to adequately train his officers, but the Complaint contains no allegations about the training Soyez provided. (Doc. 1, ¶¶ 122, 124). The Complaint also alleges that Soyez and Christner conspired with Cody and Hudlin and exceeded the scope of the search warrant that was executed on the Record. (Doc. 1, ¶ 123).

## LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted. The Court must decide "whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). In making this determination, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Lee v. Reed*, 221 F. Supp. 3d 1263, 1273 (D. Kan. 2016). Complaints brought under § 1983 against individual government actors have "a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Rider v. Werholtz,* 548 F. Supp.2d 1188, 1195 (D. Kan. 2008)

4

*(quoting Robbins*, 519 F.3d at 1242). As the Tenth Circuit has explained:

> In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore, it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008).

## ARGUMENT AND AUTHORITY

### I.   Plaintiff fails to allege official capacity or municipal liability.

Plaintiff named both Sheriff Soyez in his official capacity and the BOCC as defendants. Each is an attempt to hold the governmental entity liable under § 1983. *Swearingen v. Pleasanton Unif. Sch. Dist. 344*, 641 F. Supp. 3d 1141, 1184-85 (D. Kan. 2022).[4] At the outset, an official capacity claim must fail if there is no underlying constitutional violation. As set forth below, Plaintiff fails to state a claim of a constitutional violation against any of the County Defendants, and therefore, the claims against the municipality must also be dismissed. *E.g.*, *Rowell v. Bd. of Cnty. Comm'rs*, 978 F.3d 1165, 1175 (10th Cir. 2020).

But even if Plaintiff has stated a claim against an individual defendant, the government cannot generally be sued under § 1983 for injuries caused by its employees; rather, a municipality can only be sued if a plaintiff alleges (1) a violation of her constitutional rights, (2) an official municipal policy or custom, and (3) direct causation between the policy or custom and the constitutional violation. *Teetz v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, 2023 U.S. Dist. LEXIS 204550, at *9 (Nov. 14, 2023). A plaintiff can plead one of the following five forms of a municipal policy or custom: (1) A formal regulation or

---

[4] Because Plaintiff fails to adequately allege municipal liability, both the official capacity claims against the Sheriff and the claims against the BOCC should be dismissed. But to the extent Plaintiff does allege municipal liability, the two claims would still be redundant, and one of those defendants should be dismissed. *Douglass v. Garden Cmty. Coll.*, 543 F. Supp. 3d 1043, 1058 (D. Kan. 2021). Given the independence of sheriffs under Kansas law, the County Defendants submit that dismissal of the BOCC is more appropriate. *See Swearingen*, 641 F. Supp. 3d at 1184-85.

policy statement; (2) an informal custom amounting to a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policy makers of the decisions, and the basis of them, of subordinates to whom authority was delegated subject to the policymakers' review and approval; (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Id.* at *10 (citing *Waller v. City & Cnty. Of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019)).

The Complaint does not allege the first two elements. Rather, the Complaint appears to primarily be pursuing the fifth form: failure to train. (Doc., 1 ¶¶ 122, 124). "Municipal liability is most tenuous where a claim turns on a failure to train." *George v. Beaver Cnty.*, 32 F.4th 1246, 1253 (10th Cir. 2022) (internal quotation marks and citations omitted). That is because "a municipality's decision not to train its officers rises to the level of an official government policy under § 1983 only when the failure to train amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* (citation cleaned up). Ordinarily to allege deliberate indifference in training, a plaintiff must allege a pattern of constitutional violations by untrained employees. *Id.* Aside from two conclusory allegations that Sheriff Soyez failed to train, there are no well-pleaded facts about the training the Sheriff Soyez did or did not perform. There are no allegations of prior constitutional violations. There are no allegations suggesting deliberate indifference. There are only two conclusory allegations that the Court need not accept as true. And therefore, Plaintiff fails to state a claim for failure to train against Sheriff Soyez.

Plaintiff also fails to adequately allege forms three or four. As for the third form, conduct by Sheriff Soyez—a policymaker—can, in some circumstances constitute a municipal policy or custom. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). But the only allegations against Soyez are that he received an email from Meyer, "appointed" Detective Christner to assist Cody, discussed Cody's

investigation with Cody, spoke once on the phone with Cody, met with Cody after the warrants were executed, and oversaw the return of items that Cody had seized. None of that conduct violated any of Plaintiff's constitutional rights, and therefore, Plaintiff fails allege the third form of municipal liability.

Nor can Plaintiff rely on the fourth form of municipal liability: ratification. It is not enough to assert that a policymaker "signed off" on a subordinate's conduct. Rather, "[a] municipal entity becomes liable by way of ratification only if a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a sub-ordinate's decision and the basis for it." *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp.3d 1112, 1127 (D. Kan. 2021) (internal quotation marks and citations omitted). "[T]he ratification must be the moving force, or cause, of the alleged constitutional violation." *Meyer v. Nava*, 518 F. Supp.2d 1279, 1287 (D. Kan. 2007). There are not sufficient allegations of Soyez ratifying any of Christner's conduct. Nor are there any allegations of any such ratification being the moving force behind any constitutional violation. In short, Plaintiff fails to adequately allege municipal liability. The claims and the BOCC and the official capacity claim against Soyez should be dismissed with prejudice.

**II.    Plaintiff fails to adequately allege the existence of a conspiracy.**

Plaintiff fails to plausibly allege that Soyez or Christner engaged in an illegal conspiracy. "[A] conspiracy claim under § 1983 requires the allegations of specific facts showing an agreement and concerted action among the defendants." *Tallie v. Crawford Cnty.*, 2022 U.S. Dist. LEXIS 232720, at *13 (D. Kan. Dec. 28, 2022) (internal quotation marks and citations omitted). A Plaintiff must allege both "specific facts showing an agreement and concerted action among defendants—an agreement upon a common, unconstitutional goal, and concerted action taken to advance that goal." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022). Although an express agreement is not required, participants must "share the general conspiratorial objective." *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021

(internal quotation marks and citations omitted). And "the agreement must be illegal." *Id.* at 1025. "Therefore, proof that defendants formed an agreement or conspired to engage in lawful activities—including lawful investigative activities—would be inadequate to support a § 1983 claim." *Id.*

The only allegations of concerted action between Soyez and the City Defendants is that Soyez "appointed" Christner to assist Cody, discussed Cody's investigation with Cody, spoke once on the phone with Cody, met with Cody after the warrants were executed, and oversaw the return of items that Cody had seized. There are no well-pleaded allegations that Soyez had any illegal agreement with the City or that Soyez intended to violate anybody's rights. Plaintiff has not adequately alleged that Soyez shared any unlawful conspiratorial objective, and therefore, the conspiracy claim against him should be dismissed.

Plaintiff also fails to allege Christner's involvement in a conspiracy. Although there are more allegations against Christner, none of them give rise to an inference of a shared conspiratorial motive. There is no suggestion that Christner had any animus or motive to violate Plaintiff's rights. Prior to the execution of the warrants, Christner only assisted Cody in formatting the warrant application. Christner made it clear that it was not his investigation, and he would not sign the warrant. After the warrants were signed by a neutral magistrate, Christner did nothing more than execute it. Conclusory allegations are insufficient to state a conspiracy claim. *Lloyd v. McCausland*, 2023 U.S. Dist. LEXIS 188973, at *11 (D. Kan. Oct. 20, 2023). As are allegations "so general that they encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1247. For these reasons, Plaintiff fails to allege that Soyez and Christner engaged in a conspiracy with the City Defendants.

### III.   Soyez and Christner are entitled to qualified immunity.

Because Plaintiff fails to adequately allege that Soyez or Christner engaged in an unlawful conspiracy, the claims brought against them in their individual capacities must be based on their conduct, alone. And on those claims, Soyez and Christner are entitled to qualified immunity.

There is a presumption in favor of qualified immunity for public officials acting in their individual capacities, unless Plaintiff proves otherwise. *See Hidahl v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991). Once qualified immunity is asserted, the burden shifts to Plaintiff to meet a two-part test. *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir 2009). First, Plaintiff must establish that a defendant violated a federal right. *George v. Newman*, 726 F. App'x 699, 703 (10th Cir. 2018). Second, Plaintiff must also show that the violated right was clearly established. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).

### A.  Detective Christner is entitled to qualified immunity.

Plaintiff claims that the execution of the search warrants was done in retaliation for Plaintiff's exercise of her First Amendment rights and to abridge future exercise of her First Amendment rights. (Doc. 1, ¶¶ 120-121). Additionally, Plaintiff claims that the search warrant and the execution thereof violated the Fourth Amendment.

#### 1.  **Plaintiff fails to allege a First Amendment violation against Christner.**

To state a claim for retaliation in violation of the First Amendment, Plaintiff must allege: (1) constitutionally protected activity, (2) an injury that would chill a person of ordinary firmness from continuing to engage in such activity, and (3) that the defendant's actions were substantially motivated as a response to the constitutionally protected activity. *Martley v. Basehor*, 537 F. Supp. 3d 1260, 1267 (D. Kan. 2021). The Court need not consider the first two factors because the Complaint does not contain a single allegation supporting the third factor. Nothing touches on Christner's motivations or suggests that he had any animus against Plaintiff arising out of protected activities. In fact, there are not even allegations suggesting that Christner was aware of any protected action taken by Plaintiff. All allegations of that sort are directed entirely towards the City Defendants. (Doc. 1, ¶¶ 10-21, 44-58). Because there are no allegations suggesting that Christner was motivated by Plaintiff's protected action, she fails to state a First Amendment claim against him.

### 2. **Plaintiff fails to allege a Fourth Amendment violation against Christner**.

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Therefore, an officer can be liable for violating the Fourth Amendment if he obtains a warrant without probable cause or that is lacking in particularity.

#### a. No violation for involvement in drafting warrant.

According to the Complaint, Christner advised Cody to get a search warrant "if" he had probable cause, and further, "drafted" a search warrant application. (Doc. 1, ¶¶ 62-63). But the Complaint also makes clear that the investigation of Plaintiff was conducted by City officers, and in the email incorporated by reference in the Complaint, Christner disclaimed that he was "not comfortable swearing to an affidavit that [he] did not do the investigation on." (Ex. A).

An officer can violate the Fourth Amendment by knowingly or recklessly making false statements in an affidavit if those statements are material to the finding of probable cause. *Hernandez v. Conde*, 272 F. App'x 663, 669 (10th Cir. 2008). And while the Complaint makes several allegations about false statements attributed to Cody, there are no allegations that Christner knowingly or recklessly made any false statements. Indeed, the Complaint does not even allege that Christner made any substantive contributions to the investigation or the search warrant application, or that he provided meaningful input or advice that caused the allegedly unconstitutional search. In these circumstances, an officer is not liable for a Fourth Amendment violation. *Compare Hawkins v. Gage County*, 759 F.3d 951, 958-59 (8th Cir. 2014) (finding no violation where defendant officers merely proofread affidavit without providing substantive input) with *Mink v. Knox*, 613 F.3d 995, 1002 n. 5 (10th Cir. 2010) (noting a plaintiff states a plausible Fourth Amendment claim by alleging that a defendant's input and advice concerning the affidavit and warrant directly caused the alleged constitutional violation).

### b. As alleged, Christner's conduct was objectively reasonable.

Nor is Christner liable for executing the warrant in question. In the qualified immunity context, Courts look at the objective reasonableness of a defendant's conduct. As the Supreme Court has instructed:

> Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, **the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith**. Nonetheless, under our precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness. Rather, we have recognized an exception allowing suit when it is obvious that no reasonably competent officer would have concluded that a warrant should issue. The shield of immunity otherwise conferred by the warrant, will be lost, for example, where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

*Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (internal quotation marks and citations omitted) (emphasis added). The burden of establishing this exception "is a high one," because "an officer cannot be expected to question the magistrate's probable-cause determination." *Id.* (internal quotation marks and citations omitted). The warrant at issue was signed by a neutral magistrate. And so, Plaintiff has the high burden of showing that the warrant was "so lacking" in probable cause or particularity that no reasonable officer could have concluded that a warrant should issue. *Rathbun v. Montoya*, 628 F. App'x 988, 994 (10th Cir. 2015). Importantly, such defects must be "obvious from the face of the warrant" for this exception to apply. *United Stats v. Pulsifer*, 588 F. App'x 800, 804 (10th Cir. 2014); *Cruz v. City of Albuquerque*, 2019 U.S. Dist. LEXIS 36475, at *59 (D.N.M. March 6, 2019).

The application sought evidence of identity theft and unlawful acts concerning computers. Identify theft is defined, in relevant part, to include using personal identifying information[5] to defraud another for some benefit or to subject the victim to harm. K.S.A. 21-6107(a). And unlawful acts

---

[5] "Personal identifying information" includes someone's name, birth date, and driver's license number. K.S.A. 21-6107(e)(2).

concerning computers include accessing, without authorization, any computer system or network. K.S.A. 21-5839(a)(5). In the affidavit, Cody attested that Newell did not authorize any person to access her KDOR records. Additionally, the Complaint asserts that Plaintiff used Newell's name and driver's license information to access her KDOR records. (Doc. 1, ¶ 31). Cody further attested that KDOR's website provided an exclusive list of authorized reasons why one can access another's KDOR records. From the face of the warrant, none of the justifications set forth on the KDOR site apply to Plaintiff accessing Newell's records.[6] And so, from its face, the warrant was not "so lacking" in probable cause that any reasonable officer would know it should not issue. On the contrary, Christner was justified in relying on Cody's attestation, Hudlin's alleged conversations with KDOR, and the magistrate's subsequent issuance of the warrant.

### c. No violation for exceeding scope of preview search.

Plaintiff also alleges that Christner is liable for conducting a "sham" preview search. The signed warrant required that a preview search be conducted "to exclude from seizure" those digital devices that "have not been involved in the identity theft." Plaintiff alleges that Christner did just that, but adds the entirely conclusory allegations that Christner utilized vague and indistinct words like "vehicle" and "Kansas." (Doc. 1, ¶ 81).

"Searches that **grossly exceed the scope** of a search warrant are unconstitutional." *High Plains Livestock, LLC v. Allen*, 2019 U.S. Dist. LEXIS 103523, at *12 (D.N.M. June 19, 2019) (internal quotation marks and citations omitted) (emphasis added). In the civil context, the question is whether a seizure was "not only so far outside the scope of the warrant, but also that a reasonable executing officer would have known as much." *Id.* The Complaint does not contain any well-pleaded facts to meet this burden. Plaintiff simply concludes that it was "obvious" that the preview search was a scam.

---

[6] References to KDOR's after-the-fact statements are irrelevant; the relevant inquiry is the information known to Christner at the time he executed the signed warrant. *E.g., United State v. Thompson*, 402 F. App'x 378, 382-83 (10th Cir. 2010).

But conclusory allegations about what a plaintiff believes is obvious are not well-pleaded facts. The examples terms given—Kansas and vehicle—plainly relate to the investigation of Plaintiff accessing Newell's information from the KDOR website and comply with the warrant's requirements. The allegations simply do not support a plausible inference that any reasonable officer would have known that Christner exceeded the scope of the warrant in conducting a preview search.

### 3. Christner is not alleged to have violated a clearly established right.

Turning to the second prong of the qualified immunity analysis, Plaintiff fails to allege that Christner violated a clearly established right regarding any of the above constitutional claims. "[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S.Ct. 500, 503 (2019).

> A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation. To be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. Although there need not be a case directly on point, an officer cannot be said to have violated a clearly established right unless the right'. contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it.
>
> Courts must not define clearly established law at a high level of generality. Instead, the clearly established law must be particularized to the facts of the case. The dispositive question is whether the violative nature of particular conduct is clearly established. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

*Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018)(citation cleaned up). Plaintiff bears the burden of showing that a right was clearly established. *Gutierrez v. Cobos*, 841 F.3d 895, 900-01 (10th Cir. 2016). Is it not clearly established that Detective Christner violated the First Amendment where there are no allegations or suggestions that Christner was motivated by an unlawful animus. Plaintiff cannot point to a similar case, with allegations similar to those lodged against Christner, in which a defendant was found to have violated the First Amendment.

Likewise, it is not clearly established that Christner violated the Fourth Amendment. There is no binding precedent in which an assisting officer, who did not conduct the underlying investigation and is not alleged to have made any false statement or omissions, is liable under the Fourth Amendment for the issuance of that warrant. Nor are there any cases suggesting that it is clearly established that Christner should have known that the warrant was not supported by arguable probable cause. Although Plaintiff alleges that KDOR has since exonerated Plaintiff, KDOR's position was not known to Christner when the warrant was executed.

> In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct. Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff.

*Stonecipher v. Valles*, 759 F.3d 1134, 1141-42 (10th Cir. 2014) (cleaned up).

This objective test is not based on 20/20 hindsight: "[q]ualified immunity applies equally to reasonable mistakes of law and fact." *Id.* at 1142. When applying this framework to search warrant cases, the analysis is highly context-dependent, which requires Plaintiff to identify a very similar case to meet her burden. *See Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020). She cannot do so here. There is no precedent that would make it clear that Christner should have known the warrant was facially defective. Lastly, it is not clearly established that Christner exceeded the scope of the search warrant by conducting a preview search for terms like "Kansas" and "vehicle" while investigating Plaintiff accessing another person's driving record on the Kansas Department of Revenue website. Christner is entitled to qualified immunity on all of the claims asserted against him.

### B. Sheriff Soyez is entitled to qualified immunity on the claims against him in his individual capacity.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). There must be an

affirmative link between the defendant's participation and the alleged constitutional violation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Soyez is not alleged to have participated in the investigation of Plaintiff, sought the warrants, or participated in the search. None of the allegations against him rise to the level of a constitutional violation, and they certainly do not allege violation of a clearly established right. Therefore, Soyez is also entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the claims against the Marion County Board of County Commissioners, Sheriff Jeff Soyez, and Detective Aaron Christner should be dismissed with prejudice.

Respectfully submitted,

WATKINS CALCARA, CHTD.

/s/ JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26865
1321 Main Street - Suite 300
P.O. Drawer 1110
Great Bend, Kansas  67530
(620) 792-8231   Fax (620) 792-2775
jkuhlman@wcrf.com
Attorney for Defendants the Marion County Board of County Commissioners, Sheriff Jeff Soyez, and Detective Aaron Christner

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March, 2024, I electronically filed the above and foregoing Memorandum in Support of Motion to Dismiss by using the CM/ECF system which will send a notice of electronic filing to registered counsel.

/s/ JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26865