IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PHYLLIS J. ZORN, | ) |
| | ) |
|        Plaintiff, | ) |
| vs. | ) Civil Action No. 2:24-cv-2044-DDC-TJJ |
| | ) |
| CITY OF MARION, KS; DAVID MAYFIELD, individually and in his official capacity; GIDEON CODY, individually and in his official capacity; ZACHARIAH "ZACH" HUDLIN, in his individual capacity; THE BOARD OF COUNTY COMMISSION OF MARION COUNTY, KS; SHERIFF JEFF SOYEZ, individually and in his official capacity; AARON CHRISTNER, in his individual capacity. | ) ) ) ) ) ) ) ) ) |
| | ) |
|        Defendants. | ) |
| | ) |

**MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS BY DEFENDANTS
MAYFIELD, HUDLIN AND CITY OF MARION, KS**

Defendants David Mayfield, Zach Hudlin and the City of Marion, Kansas, by and through their counsel of record Edward L. Keeley and Jennifer M. Hill of McDonald Tinker PA, submit this legal memorandum in support of these Defendants' motion to dismiss. Plaintiff's Complaint (Doc. 1) alleges that these Defendants violated Zorn's rights under the First and Fourth Amendments of the U.S. Constitution. However, Zorn's theories of recovery under 42 U.S.C. §1983 fail to state any viable cause of action against these Defendants as a matter of law. Moreover, Mayfield and Hudlin are entitled to qualified immunity. Thus, Mayfield, Hudlin, and the City of Marion request that the Court dismiss Zorn's claims with prejudice.

1

# **TABLE OF CONTENTS**

I.    Nature of the Case ................................................................................................3

II.   Plaintiff's Factual Allegations. ..............................................................................3

    A.   General Background. ....................................................................................3

    B.   Kari Newell's Driver's Records ....................................................................4

    C.   The Investigation ..........................................................................................8

    D.   Execution of the MCR Search Warrant ........................................................9

III.  Issues....................................................................................................................11

IV.   Arguments and Authorities .................................................................................12

    A. Zorn Has Not Stated Any Plausible §1983 Claim Against These Defendants Under *Twombly* ..................................................................12

    B. Zorn's First and Fourth Amendment §1983 Claims Against Defendant Mayfield Are Barred By Qualified Immunity ..........................................13

    C. Zorn's First and Fourth Amendment §1983 Claims Against Defendant Hudlin Are Barred by Qualified Immunity ..............................................14

    D. Zorn Has Not Stated Any Viable §1983 Conspiracy Claim Against The Individual Defendants ...............................................................................15

    E. Plaintiff's §1983 Claim Against The City Of Marion Should Be Dismissed For Failure To State A Viable Cause of Action ........................................16

Conclusion ....................................................................................................................18

Certificate of Service ....................................................................................................18

## I.   NATURE OF THE CASE

The Plaintiff, Phyllis Zorn, alleges that these Defendants violated her rights under the First and Fourth Amendments during August 2023 in Marion, Kansas. This case is brought pursuant to 42 U.S.C. §1983. These Defendants deny Plaintiff's claims and assert qualified immunity and failure to state a plausible claim under *Twombly*. They request that the Court dismiss all claims against them with prejudice.

## II.   PLAINTIFF'S FACTUAL ASSERTIONS

Zorn has asserted 118 paragraphs (28 pages) of factual allegations in her Complaint. (Doc. 1 at 1-28) Many of these assertions do not pertain to these Defendants or the claims against them but rather to the claims against other Defendants. The factual and legal allegations irrelevant to these Defendants will not be discussed herein.

For purposes of this motion only, Plaintiff's non-conclusory factual allegations may be assumed to be true. *Ashcroft v. Iqbal*, 556 U.S. at 679-680. However, Zorn's conclusory assertions of purported fact or law may not be considered by the Court in deciding this motion. *Id.* Moreover, relevant facts may be established herein by a) documents referred to in Plaintiff's Complaint if the documents are central to Plaintiff's claim or b) by documents which are subject to judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). The Court may consider such evidence without converting this motion to dismiss into a summary judgment motion. *Id.*

### A.   General Background

**1. Plaintiff Zorn is a reporter for the Marion County Record (MCR), a weekly newspaper published in Marion, Kansas. (Doc. 1 at 1)**

2.      **David Mayfield was the duly elected Mayor of Marion. He and four Council members governed the town which is located in central Kansas. Mayfield was acting under color of state law at all relevant times. (*Id.* at 2)**

4.      **Officer Zachariah "Zach" Hudlin was a member of the Marion Police Department (MPD). He was acting under color of state law at all relevant times. (*Id.*)**

15.     **In late April 2023, Mayor Mayfield offered Gideon Cody the police chief position, even before the City Council approved his hiring. On May 1, Cody took the oath of office before the Council voted to hire him. (*Id.* at 4)**

18.     **Eric Meyer (Meyer) is the owner and publisher of the Marion County Record (MCR) newspaper. (*Id.* at 5)**

19.     **Kari Newell (Newell) owned a coffee shop and restaurant in Marion. (*Id.*)**

20.     **On August 1, 2023, Newell and Cody asked Meyer and Plaintiff Zorn to leave an event involving Congressman Jake LaTurner which was being held at Newell's coffee shop. (*Id.* at 5-6)**

B.      **Kari Newell's Driver's Records**

22.     **On August 2, Zorn received information from a Marion resident, Pam Maag (Maag) indicating that Newell's driver's license was suspended due to a DUI conviction. (*Id.* at 6)**

24.     **Maag also sent Zorn a copy of a letter addressed to Newell from the Kansas Department of Revenue (KDOR) dated August 1. (*Id.*) (*See* also KDOR letter in Exh. 1 (under seal); Complaint reference; *Gee.*)**

25.     **The KDOR letter to Newell included her full name, address, driver's license number, and date of birth. The letter also contained requirements needed before Newell**

4

could restore her driving privileges. (*Id.* at 6-7) (*See also* Exh. 1)

27. Zorn shared a printed copy of the KDOR letter with Meyer. Meyer went to the KDOR website titled "Kansas Driver's License Status Check." (Doc. 1 at 7)

29. Relying on Newell's personal information from the KDOR letter, Meyer used the "Status Check" webpage to confirm Newell's DUI conviction and suspended license. He did not access or obtain the KDOR letter from the "Status Check" webpage. (*Id.* at 7-8)

30. "Zorn then called the Kansas Department of Revenue and was told that the letter in question was available on the same public-facing website, a user simply must keep clicking to find the link. Ms. Zorn then went to the same website Eric Meyer had used and saw that at the bottom of the same screen showing Newell's DUI conviction and suspension there was a box to click to view 'Documents.' " (*Id.* at 8) (*See also* KDOR webpage form in Exh. 2; Complaint reference; *Gee*.)

31. "When Ms. Zorn clicked on that box a form appeared on the webpage and asked for 'Requester's Information.' Zorn then inserted her own name into the form and entered Newell's driver's license number and address." (Doc. 1 at 8)

32. "The Kansas Driver's License Status Check webpage then required Zorn to check a box that read: 'I will use the information requested in a manner that is specifically authorized by Kansas Law and is related to the operation of a motor vehicle or public safety. (See section VI on the front of this form).'" (*Id.*) (*See also* Exh. 2.)

33. "After Zorn checked the box and clicked "Accept," nineteen "Documents" appeared on the screen-the first of which was the August 1, 2023, letter from the Kansas Department of Revenue to Newell concerning the ignition interlock device, *i.e.*, the same document the source had previously provided Zorn." (*Id.*)

34. "Having confirmed that the KDOR letter was legitimate, Zorn then closed the webpage and informed Meyer that she had verified that the information (and document) provided by the confidential source was accurate. Ms. Zorn never claimed to be Ms. Newell at any time in her dealings with the website." (*Id.* at 8-9)

39. Meyer subsequently decided not to publish the information about Newell because he believed the paper was being drawn into a bitter divorce. (*Id.* at 10)

41. On Friday, Aug. 4, Meyer emailed Chief Cody and Sheriff Soyez and advised them that a "confidential source" had provided the MCR with a KDOR letter addressed to a "Marion County business woman" recently in the news. Meyer did not identify MCR's source. Meyer said the KDOR letter disclosed the steps needed to reinstate the business woman's drivers license, including installing an ignition interlock device. (*Id.*) (*See also* Meyer email in Exh. 3; Complaint reference; *Gee*.)

43. Also on August 4, the Marion Vice Mayor, Ruth Herbel (Herbel), sent an email to the Marion City Administrator. (Doc. 1 at 11)

44. Attached to Herbel's email was a screenshot of the same KDOR letter to Newell which Zorn had received from Maag and which Zorn had "confirmed" through the KDOR website. (*Id.*) (*See also* Exh. 1)

45. Herbal advised the City Administrator that Herbel had received the KDOR letter from Maag. (Doc. 1 at 11)

46. The City Administrator notified Marion Mayor David Mayfield of his communications with Herbel the very same day. Specifically, the City Administrator e-mailed the Mayor and the City Clerk stating that Chief Cody and the police department would not be looking into this and the City needed to stay out of this "hear say." (*Id.*)

6

48.     Herbel assumed office as a member of the Marion City Council in 2020. Since that time, the pages of the MCR are full of reports of attacks and counterattacks between Herbel and Mayor Mayfield-with Herbel accusing the Mayor of repeatedly violating the city charter, giving out unauthorized raises to favored city employees, holding illegal secret meetings, and much more. (*Id.* at 12)

49.     During that same time, editorials in the MCR had referred to Mayfield as a dictator, a bully, as someone who "desires to take all power for himself," and as someone who lies so much he "metaphorically set[s] his pants on fire" on a regular basis. (*Id.*)

50.     At 7:53 a.m. on Monday, August 7, 2023, the City Administrator forwarded to Mayfield and the other Council members (but not Vice Mayor Herbel) Herbel's email from the Friday before in which Herbel had forwarded Newell's KDOR letter. (*Id.*)

51.     Shortly thereafter, both Mayfield and Council member Zach Collett notified Newell that Herbel had learned of Newell's DUI and claimed that Herbel planned to use Newell's DUI conviction to oppose Newell's application for a liquor license for her restaurant, which was coming before the City Council later that same day. Mayfield also told Newell the only way he could get Herbel off the City Council was if she (Herbel) was convicted of a crime. (*Id.* at 12-13)

52.     On August 7, Mayfield authorized Chief Cody to begin an investigation into Newell and the MCR. (*Id.* at 13)

53.     Mayfield could do this because, according to the Marion City Code, the Mayor "shall …[h]ave superintending control of all officers and affairs of the city." Code of the City of Marion, Kan. §1-205(a). (*Id.*)

7

C.  **The Investigation**

59.  Later on Monday, August 7, Marion Police Officer Zach Hudlin, at the direction of Chief Cody, "made contact with someone at KDOR in their information technology department" and was told that on Friday, August 4, "Phyllis Zorn" had accessed Kari Newell's driver's record via the Kansas Driver's License Status Check website. Hudlin did not record the name of the person he spoke with, noting only the unidentified person was "female." (*Id.* at 14). KDOR told Hudlin the Newell letter "was accessed by Phyllis Zorn and three minutes later by Kari Newell." (Hudlin memo in Exh. 4.; Complaint reference; *Gee.*)

55.  Based on this information, Chief Cody told Newell that a reporter at MCR had stolen Newell's identity and had provided Herbel with a copy of Newell's driver's license record. (Doc. 1 at 13)

57.  At a meeting of the Marion City Council later on August 7, Newell spoke publically and accused the MCR and Herbel of illegally obtaining Newell's driver's records. Meyer denied that anyone at the MCR had provided Herbel with Newell's KDOR letter. (*Id.* at 13-14) (*See also* City Council minutes in Exh. 5; Complaint reference, *Gee.*)

58.  Following the City Council meeting, Chief Cody stepped up his investigation, coordinating his work with Mayor Mayfield and Sheriff Jeff Soyez. (Doc. 1 at 14)

74A.  On the morning of Friday, August 11, Chief Cody presented his nine-page sworn affidavit to Magistrate Judge Laura Viar as an application requesting issuance of a search warrant for the MCR offices. Cody's affidavit stated that he had probable cause to believe and did believe that the crimes of identity theft (KSA 21-6107) and unlawful acts concerning computers (KSA 21-5839) had been committed and that evidence of such criminal offenses could be found in the MCR offices. (Search Warrant application in Exh. 6

8

at 1; Judicial notice of state court records; *Gee.*)

74B. On August 11 at 9:00 a.m., Judge Viar signed Cody's requested search warrant. The Court found that there was probable cause to believe that crimes had been committed in violation of K.S.A. 21-6107 and 21-5839 and that evidence of the offenses could be found at the MCR offices. The search warrant further commanded that the listed items of evidence (including computers, cellular devices, and documents pertaining to Newell) could be seized. (Search Warrant in Exh. 8; Judicial notice of state court records; *Gee.*)

74C. Chief Cody's probable cause for the search included a written statement by Newell stating that she personally heard Meyer admit Zorn had downloaded Newell's KDOR letter. (Exh. 6; *See also* Newell's written statement in Exh. 7; referenced in Search Warrant application; *Gee*)

D. Execution of the MCR Search Warrant

74. On Friday, August 11, Chief Cody led a team of law enforcement officers in executing search warrants on the MCR offices and the residences of Meyer and Herbel. (Doc. 1 at 18)

76. The first search occurred at the MCR offices led by Chief Cody who was assisted by Officer Hudlin and Detective Christner. (*Id.*)

79. Detective Christner conducted or attempted to conduct a "preview search" of Zorn's work computer utilizing special software. (*Id.* at 19)

84. While Christner was running the preview search on Zorn's work computer, Hudlin was conducting a physical search of the *MCR* newsroom, reading papers on countertops, going through reporter's purses, and going through files in reporter's desks. (*Id.* at 20)

9

85. When Hudlin got to Deb Gruver's desk (it was Gruver who had been investigating the tips which the paper had received about Chief Cody) Hudlin paid particular attention to the files in the bottom, right-hand drawer in Gruver's desk. (*Id.*)

86. Among the files Hudlin observed in Gruver's desk drawer was Gruver's investigative file on the confidential tips the *MCR* had received about Cody from officers with the Kansas City, Missouri, Police Department (KCPD) describing Cody's alleged misconduct. The file was in a folder titled "Capt. Gideon Cody," which was Cody's rank in the KCPD when he applied to be Marion's police chief. Also inside the folder was information about other confidential sources who provided information about Cody. (*Id.*)

87. After Hudlin went through Gruver's files-and while he was standing next to Gruver's desk-Hudlin began the following conversation with Chief Cody:

Hudlin: "You want to look through this desk?"

Cody: "You have the right to look for yourself."

Hudlin: "I know, I'm asking do YOU want to look through this desk?

Cody: "Man, you got a right to …"

Hudlin: "I understand. You will understand shortly." (*Id.* at 20-21.)

88. Cody is then seen on Hudlin's body camera footage bending down to look inside Gruver's bottom right-hand desk drawer, where Gruver's file on Cody was located. A short time later, Cody is recorded as saying: "Hmm…. Keeping a personal file on me." (*Id.* at 21)

92. Following the completion of Christner's "preview search" on Zorn's work computer which took over an hour, Hudlin said, "We'd be here all freakin' day if we were going to do that to all those computers." (*Id.* at 21-22)

10

93. After Chief Cody talked to Sheriff Soyez by phone, Cody decided not to conduct a "preview search" on the other computers and electronic devices in the MCR offices but rather to seize them all, including Zorn's work computer. (*Id.* at 22)

97. Cody also directed Officer Hudlin to seize Zorn's personal cell phone although no "preview search" had been conducted on it. (*Id.* at 23)

110. On August 16, Joel Ensey (Marion County Attorney) filed a motion to release the items seized during the searches. The District Judge, Benjamin Sexton, granted Ensey's motion the same day. In a press release, the County Attorney stated that insufficient evidence existed to establish "a legally sufficient nexus" between the crimes being investigated and the places searched and the items seized. (*Id.* at 26) In the same press release, however, the County Attorney stated his belief that Chief Cody's affidavit "established probable cause to believe that an employee of the newspaper may have committed the crime" prohibited by K.S.A. 21-5839 relating to computers. (Ensey press release in Exh. 9, Complaint reference; *Gee.*)

113. Later on August 16, a forensic examiner retained by the MCR took possession of all the seized items at the Sheriff's Office. This transfer of property was personally supervised by the Sheriff. (Doc. 1 at 26-27)

III. **ISSUES**

    A. **Has Zorn Stated Any Plausible §1983 Claim Against These Defendants Under** ***Twombly*****?**

    B. **Are Zorn's First and Fourth Amendment Claims Against Defendant Mayfield Barred By Qualified Immunity?**

    C. **Are Zorn's First and Fourth Amendment Claims Against Defendant Hudlin Barred By Qualified Immunity?**

    **D.**    **Has Zorn Stated Any Viable §1983 Conspiracy Claim Against The Individual Defendants?**

    **E.**    **Does Zorn's §1983 Theory Of Recovery Against The City Of Marion Fail To State Any Viable Claim?**

**IV.**    **ARGUMENTS AND AUTHORITIES**

    **A.**    <u>Zorn Has Not Stated Any Plausible §1983 Claim Against These Defendants Under *Twombly*</u>

To avoid a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal.* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 570 (2007)). In other words, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Tenth Circuit has construed the *Twombly* court's use of the term "plausible" to refer to "the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 127 S. Ct. at 1874). This requirement of plausibility not only weeds out claims that do not have a reasonable chance of success but also serves to give defendants fair notice of the factual grounds for each claim. *Id.* at 1248.

In §1983 cases, the *Twombly* pleading standard requires specific allegations against each individual defendant:

> In §1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore, it is particularly important in such circumstances that the complaint make clear exactly <u>who</u> is alleged to have done <u>what</u> to <u>whom</u> to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins,* 519 F.3d 1249-50 (emphasis in original) (citing *Twombly*, 127 S. Ct. at 1970-71 n. 10.).

The Tenth Circuit applies a two-step process when analyzing a motion to dismiss under *Twombly* and *Iqbal. Hall v. Witteman,* 584 F.3d 859, 863 (10th Cir. 2009). First the court must identify conclusory allegations not entitled to the assumption of truth. *Id.* "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, L.L.C. v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *Hall*, 584 F.3d at 863. "In other words, a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Kansas Penn Gaming,* 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555).

In the case at bar, Zorn's conclusory claims against Defendants Mayfield, Hudlin and the City of Marion utterly fail the pleading standard required by *Twombly* and *Iqbal.* First, Plaintiff's allegations are almost entirely conclusory assertions "not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679-680. Second, Zorn's few factual allegations are insufficient to raise Plaintiffs claims "above the speculative level" with respect to these Defendants. (*Id.*) Thus, they have not been given fair notice of the factual basis of the claims against them. (*Id.*) Therefore, these Defendants are entitled to dismissal pursuant to Rule 12(b)(6) because no plausible §1983 claim has been made against them. *Twombly, Iqbal, Robbins.*

**B.     Zorn's First And Fourth Amendment §1983 Claims Against Defendant Mayfield Are Barred By Qualified Immunity.**

Plaintiff asserts conclusory claims that Defendant Mayfield violated her First and Fourth Amendment rights. However, Zorn only factually alleges that 1) Mayfield was Mayor; 2) Mayfield

13

and Ruth Herbel (Vice Mayor) didn't like each other; 3) Mayfield authorized Chief Cody to investigate after Herbel sent Kari Newell's confidential KDOR letter to the City Administrator; and 4) Chief Cody "coordinated" his investigation with Mayfield and Sheriff Soyez. (Doc. 1 at 1-14) Zorn does not allege that Mayfield had any personal involvement in Cody's investigation; in the preparation of Cody's MCR search warrant application; in the preparation of the search warrant itself or in the execution of the search warrant at the MCR offices. (*Id.*) Thus, Plaintiff's allegations do not state any viable constitutional claim against Defendant Mayfield. He is also entitled to qualified immunity because the law was not clearly established as Zorn contends. *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (individual liability under §1983 requires personal involvement); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (an affirmative link must exist between the defendant's conduct and the alleged constitutional violation).

    **C.**    <u>Zorn's First And Fourth Amendment §1983 Claims Against Defendant Hudlin Are Barred By Qualified Immunity</u>

Plaintiff asserts conclusory claims that Defendant Hudlin violated her First and Fourth Amendment rights. However, Zorn only factually alleges that 1) Hudlin was a Marion police officer; 2) Hudlin contacted KDOR during the investigation and was told that a person identified as "Phyllis Zorn" had downloaded Newell's KDOR letter from the KDOR website; 3) Hudlin participated in the execution of the MCR search warrant; 4) Hudlin searched the MCR offices, including the desk drawer of reporter Deb Gruver; 5) Hudlin brought it to the attention of Chief Cody that Gruver had a file regarding Cody's alleged misconduct while he was employed by the Kansas City Police Department; 6) Hudlin complained that Detective Christner's "preview search" of Zorn's work computer was taking too long, and 7) Cody directed Hudlin to seize Zorn's work computer and her cell phone. (Doc. 1 at 18-23)

These allegations do not state any viable §1983 claim against Defendant Hudlin. He is also entitled to qualified immunity because the law was not clearly established as Zorn contends. *Wigley v. City of Albuquerque*, 567 Fed. Appx. 606, 609-610 (10th Cir. 2014)(officer assisting in executing a search warrant is entitled to rely on the presumed validity of the search warrant procured by another officer); *Harte v. Board of Commissioners of Johnson County*, 2017 WL 5068907 at 6 (D. Kan.) (same); *Smith v. Plati,* 258 F.3d 1167, 1176-1178 (10th Cir. 2001) (three-pronged test for First Amendment liability must be satisfied to state a viable claim).

In addition, Zorn's Fourth Amendment claim as it relates to her work computer lacks sufficient factual allegations to establish that she has standing to challenge its seizure. *United States vv. Angevine,* 281 F.3d 1130, 1134-1135 (10th Cir. 2002); *Haynes v. Attorney General of Kansas,* 2005 WL 2704956 at 3-4 (D. Kan.).

### D. Zorn Has Not Stated Any Viable §1983 Conspiracy Claim Against The Individual Defendants

Plaintiff alleges that all of the individual Defendants in this case conspired with one another to violate her First and Fourteenth Amendment rights. However, Zorn's §1983 conspiracy claim fails to state any viable cause of action against any of the Defendants, including Mayfield, Hudlin and Cody. *Tankovich v. Kansas Board of Regents,* 159 F.3d 504, 533 (10th Cir. 1998). For such a claim to be actionable, "a plaintiff must allege facts showing an agreement and concerted action amongst the defendants." *Id.* Conclusory allegations are insufficient. *Id*; *see also Banks v. Opat,* 814 Fed Appx. 325 (10th Cir. 2020) (a plaintiff must plead and prove not only a conspiracy but also an actual deprivation of rights); *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-1228 (10th Cir. 2010) (there must be an allegation of an agreement among the defendants regarding a general unlawful conspiratorial objective which is accomplished).

In the case at bar, Zorn has failed to allege facts to show: a) an agreement among the individual Defendants; b) to achieve a general unlawful objective relating to Zorn; c) which resulted in the actual deprivation of Zorn's constitutional rights. Therefore, Plaintiff has not stated any viable §1983 conspiracy claim against Mayfield, Hudlin or Cody. *Tankovich, Banks, Brooks*. These Defendants also are entitled to qualified immunity on this claim because the law was not clearly established as Zorn contends. *Id.*

### E. Plaintiff's §1983 Claim Against The City Of Marion Should Be Dismissed For Failure To State A Viable Cause Of Action

Plaintiff Zorn is making a conclusory §1983 municipal liability claim against the City of Marion. Before the City of Marion may be held liable under that theory, Plaintiff must show that a City policy or custom was the "moving force" behind the violation of Plaintiff's constitutional rights. *Hinkle v. Beckham County Board of County Commissioners,* 962 F.3d 1204, 1239-1242 (10th Cir. 2020). Specifically, Plaintiff must establish: a) an official policy or custom, b) causation, and c) the requisite state of mind of the policy maker. *Burke v. Regalado*, 935 F. 3d 960, 998 (10th Cir. 2019).

Plaintiff Zorn's §1983 municipal liability claim against the City of Marion is based on the conclusory theory that the City failed to train its police officers "as to the protections guaranteed under the Fourth Amendment." (Doc. 1 at 29) However, the Complaint is devoid of any alleged facts to show what specific training supposedly was not given or how the purported lack of training caused Zorn's alleged constitutional injury. *Hinkle, Burke.* Nor is the City's state of mind alleged. *Id.*

Zorn's §1983 municipal liability claim is foreclosed by Tenth Circuit precedent. In *Waller v. City and County of Denver,* 932 F.3d 1277, (10th Cir. 2019), §1983 municipal policy or custom

claims were made by the plaintiff against the defendant municipality. The *Waller* court stated that such claims may only be established in the following ways:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval; (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.* at 1283 (quoting *Bryson v. City of Oklahoma City,* 627 F.3d 784, 788 (10th Cir. 2010)).

The *Waller* court further noted that even after establishing that an alleged improper municipal policy or custom exists, a plaintiff must also show "deliberate indifference" by the final policymaker, as well as a "direct causal link" (causation) between the municipal policy/custom and the injury alleged. *Id.* at 1284. Usually deliberate indifference may not be found absent a pattern of unconstitutional behavior. *Id.* A municipality may not be held liable under §1983 simply because it employed an employee or employees who violated a plaintiff's constitutional rights. *Id.*

Zorn's §1983 policy or custom claim against the City of Marion in the case at bar fails for the same reasons stated in *Waller.* Zorn has not alleged any facts (as opposed to conclusory assertions) to show an improper policy or custom of deficient training, deliberate indifference, or causation with respect to the City of Marion. *Id.* Therefore, the City of Marion is entitled to dismissal of Plaintiff's §1983 municipal liability claim as a matter of law. *Id.* This would also include Zorn's "official capacity" claims against Defendants Mayfield and Cody. *Douglas v. Garden City Community College*, 543 F. Supp. 3d 1043, 1058-1059 (D. Kan. 2021) (official capacity claims are duplicative of municipal liability

claims). Furthermore, Zorn's §1983 claim against the City of Marion fails as a matter of law because Zorn's constitutional rights were not violated by any City official or employee. *Rowell v. Board of County Commissioners*, 978 F. 3d 1165, 1175 (10th Cir. 2020).

## V.   CONCLUSION

For the reasons stated herein, Defendants Mayfield, Hudlin, and the City of Marion request that the Court enter judgment against Plaintiff as to her claims in the Complaint, dismiss Defendants from this action with prejudice and for any further relief the Court deems just and proper.

Respectfully submitted:

/s/Edward L. Keeley
Edward L. Keeley, #09771
Jennifer M. Hill, #21213
MCDONALD TINKER PA
300 West Douglas Avenue, Suite 500
Wichita, Kansas 67202
T: (316) 263-5851; F: (316) 263-4677
E: ekeeley@mcdonaldtinker.com
E: jhill@mcdonaldtinker.com
*Attorneys for Defendants Mayfield, Hudlin & Marion*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 25th day of March 2024, a true and correct copy of the above and foregoing **Defendants' Memorandum in Support Motion to Dismiss** was electronically filed with the United States District Court via the CM/ECF system, which will provide electronic notice to all attorneys of record including, the pro se Plaintiff:

| | |
|---|---|
| Jeffrey L. Kuhlmann<br>WATKINS CALCARA, CHTD.<br>1321 Main Street – Suite 300<br>P.O. Drawer 1110<br>Great Bend, Kansas 67530<br>Tel: (620) 792-8231<br>Email: jkuhlman@wcrf.com | Randall K. Rathbun<br>DEPEW GILLEN RATHBUN & MCINTEER LC<br>8301 E. 21st Street N., Suite 450<br>Wichita, Kansas 67206-2936<br>T: (316) 262-4000<br>Email: randy@depewgillen.com |

/s/Edward L. Keeley
Edward L. Keeley, #09771