## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PHYLLIS J. ZORN

        Plaintiff,

        v.

CITY OF MARION, et al.,

        Defendants.

Case No. 2:24-CV-02044-DDC-TJJ

## THE SHERIFF DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

The First Amended Complaint ("1AC") is full of scandalous allegations against Marion Police Chief Gideon Cody, culminating in the assertion that he abused his power to execute an illegal search warrant in violation of Plaintiff's rights. But Cody is not the only party Plaintiff seeks to hold liable for her alleged damages. She also sued Marion County Sheriff Jeff Soyez, Detective Aaron Christner, and the Marion County Board of County Commissioners ("BOCC") ("the Sheriff Defendants"). But the 1AC lacks allegations that would subject those defendants to liability. Plaintiff completely fails to allege municipal liability. As for the claims against Soyez and Christner in their individual capacities, Plaintiff does not adequately allege that they violated any clearly established federal rights and so, they are entitled to qualified immunity. Lastly, Plaintiff fails to allege the essential elements of a violation of the Privacy Protection Act. For these reasons, the Sheriff Defendants respectfully request that the claims against them be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

Jeff Soyez is the Sheriff of Marion County, and Aaron Christner is one of his detectives. (Doc. 35, ¶¶ 5-6). The Marion County Record ("the Record") is the local newspaper in Marion, and Plaintiff

---

[1] Because this is a motion under Rule 12(b)(6), well-pleaded facts are taken as true. The Sheriff Defendants' recitation of facts focuses primarily on the allegations relating to the claims against them.

is one of its reporters. (Doc. 35, ¶ 1). The 1AC asserts that City of Marion Police Chief Gideon Cody was hostile to the Record because it was investigating his background. (Doc. 35, ¶¶ 16-22). The 1AC further alleges that Soyez was Cody's friend and recommended Cody for the Chief position. (Doc. 35, ¶¶ 9, 11).

On August 1, a Marion resident, Kari Newell, asked Cody to trespass Plaintiff and the Record's editor, Eric Meyer, from her property. (Doc. 1, ¶¶ 27-29). The next day, Plaintiff received a message from Pam Maag asserting that Newell had been illegally driving with a suspended license. (Doc. 35, ¶ 30). Maag also sent Plaintiff a letter that the Kansas Department of Revenue ("KDOR") had sent to Newell. (Doc. 35, ¶ 32). The letter contained Newell's private identifying information. (Doc. 35, ¶ 34). Meyer and Plaintiff each went to KDOR's website and utilized Newell's identifying information to access her driving information and confirm her license was suspended. (Doc. 35, ¶¶ 35). Plaintiff used the Driver's License check to confirm Newell's suspension, and then proceeded to "keep clicking" until she could download documents. (Doc. 35, ¶¶ 37-38). The Record did not publish the information about Newell's license, but instead emailed it to Cody and Soyez. (Doc. 35, ¶¶ 69-71). That information was also provided to a City Council member, which resulted in Cody investigating whether Newell was the victim of identity theft. (Doc. 35, ¶¶ 73, 89-90). The 1AC asserts, in conclusory fashion, that Soyez joined Cody's investigation (Doc. 35, ¶ 93, 96). But the 1AC provides no facts relating to Soyez's actual involvement. For example, there are no allegations about what Soyez allegedly investigated, that he spoke with any witnesses, or that he had any input in drafting the warrant application.

There are a few more allegations about Christner's involvement. Christner did not do any of the investigations into Zorn, although the 1AC does allege that Christner put Cody's investigation to paper and responded to Cody's request that Christner seek preservation warrants. (Doc. 35, ¶¶ 97-100). The only advice Christner is alleged to have given was to tell Cody to write a search warrant "if [Cody] had [probable cause]." (Doc. 35, ¶ 98). The 1AC concludes that Christner's initial draft of the

warrant, which was based on Cody's investigation was replete with false statements, which Christner could have discovered had he independently re-investigated Cody's investigation. (Doc. 35, ¶¶ 101, 115). Cody took the draft from Christner and prepared search warrant applications, in which, according to Plaintiff, additional false statements were added. (Doc. 35, ¶ 121). Cody returned the draft warrants to Christner, who is alleged to have "prepared them" and sent them back to Cody. (Doc. 35, ¶ 130). From there, the warrant applications were presented to Magistrate Judge Laura Viar, who signed off on the warrant for the Record. (Doc. 35, ¶¶ 133-143). Plaintiff claims there were illegalities or irregularities in the approval of the warrants; however, neither Soyez nor Christner are alleged to have presented the warrants.[2] Cody is the sole affiant.

Cody led a team of officers to execute the warrant on the Record on August 11, 2023. (Doc. 35, ¶ 144). Christner assisted in executing the warrant; Soyez did not. (Doc. 35, ¶ 146). The signed warrant stated there was probable cause that evidence of violations of K.S.A. 21-6107, identify theft, and K.S.A. 21-5839, unlawful acts concerning computers, would be uncovered. (Ex. A). And the warrant commanded that Cody, "or any peace officer in the State of Kansas," conduct a search under numerous parameters. It called for "a preview search of all located digital communications devices and digital storage media to exclude from seizure those which have not been involved in the identity theft, by use of manual or automated preview tools." During the execution of the warrant, Christner used a software called osTriage to conduct a keyword preview search. (Doc. 35, ¶¶ 150-151). The 1AC makes the conclusory allegation that the preview search was a "sham," because it included words like "vehicle" and "Kansas", and resulted in 100% false hits. (Doc. 35, ¶¶ 151-152). Cody later spoke to Soyez about the search, and then Cody told Soyez they would "just take them all." (Doc. 35, ¶ 164). After the items were seized, Cody went to the Sheriff's Office and talked with Soyez. (Doc. 35, ¶ 180).

---

[2] The warrant and application, which are referred to extensively in the Complaint, is attached as Exhibit A. *Kang Sik. Park v. First Am. Title Ins. Co.*, 743 F. App'x 902, n. 2 (10th Cir. 2018).

Soyez later made two truthful statements to Plaintiff, telling her he did not execute the warrants, which were sought by the Police Department, and not the Sheriff's office. (Doc. 35, ¶¶ 191-192).

## LEGAL STANDARD

Under Rule 12(b)(6), the Court must decide "whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). In making this determination, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Lee v. Reed*, 221 F. Supp. 3d 1263, 1273 (D. Kan. 2016). Complaints brought under § 1983 against individual government actors have "a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Rider v. Werholtz*, 548 F. Supp.2d 1188, 1195 (D. Kan. 2008) *(quoting Robbins*, 519 F.3d at 1242).

## ARGUMENT AND AUTHORITY

I.    **Plaintiff fails to allege official capacity or municipal liability under § 1983.**

Plaintiff named both Soyez in his official capacity and the BOCC as defendants. Each is an attempt to hold the governmental entity liable under § 1983. *Swearingen v. Pleasanton Unif. Sch. Dist. 344*, 641 F. Supp. 3d 1141, 1184-85 (D. Kan. 2022).[3] An official capacity claim must fail if there is no underlying constitutional violation. As set forth below, Plaintiff fails to state a claim of a constitutional violation against either of the Sheriff Defendants, and therefore, the claims against the municipality must also be dismissed. *E.g.*, *Rowell v. Bd. of Cnty. Comm'rs*, 978 F.3d 1165, 1175 (10th Cir. 2020). But

---

[3] Because Plaintiff fails to adequately allege municipal liability, both the official capacity claims against the Sheriff and the claims against the BOCC should be dismissed. But to the extent Plaintiff does allege municipal liability, the two claims are redundant, and one should be dismissed. *Douglass v. Garden Cmty. Coll.*, 543 F. Supp. 3d 1043, 1058 (D. Kan. 2021). Given the independence of sheriffs in Kansas, the Sheriff Defendants submit that dismissal of the BOCC is more appropriate. *See Swearingen*, 641 F. Supp. 3d at 1184-85.

even if Plaintiff has stated a claim against an individual defendant, the government cannot generally

be sued under § 1983 for injuries caused by its employees; rather, a municipality can only be sued if a

plaintiff alleges (1) a violation of her constitutional rights, (2) an official municipal policy or custom,

and (3) direct causation between the policy or custom and the constitutional violation. *Teetz v. Bd. of*

*Cnty. Comm'rs of Sedgwick Cnty.*, 2023 U.S. Dist. LEXIS 204550, at *9 (Nov. 14, 2023). As this Court

has observed:

> Pleading a municipal policy, custom, or practice is like pleading the breach element of
> negligence—which is also ultimately a question of fact for the jury. **The plaintiff
> cannot simply allege that there is a policy in place, but, rather, must plead facts
> that, if true, would give rise to a plausible inference that such a policy exists.**
> With formal or written policies, satisfying this pleading standard is easy; the plaintiff
> can simply allege what the policy is and where it is codified. With informal, unwritten
> policies, customs, or practices, the plaintiff can plead either a pattern of multiple
> similar instances of misconduct—no set number is required, and the more unique the
> misconduct is, and the more similar the incidents are to one another, the smaller the
> required number will be to render the alleged policy plausible—or use other evidence,
> such as a police officers' statements attesting to the policy's existence. **The Tenth
> Circuit has not explicitly held as much, but they have implied that district
> court[] should analyze policies, practices, or customs under Monell as legal
> conclusions at the pleading stage—which must be supported by facts, rather
> than conclusorily alleged—and not facts in and of themselves, to be taken as
> true at face value . . .**
>
> To the extent Plaintiff alleges a formal policy, he makes no reference to where such
> policy is contained or codified. **To the extent Plaintiff alleges informal policies,
> practices, custom, or usage, such a policy or custom must be widespread,
> permanent, and well-settled such that it effectively carries the force of law.**

*Pino v. Weidl*, 2020 U.S. Dist. LEXIS 122325, at *16-18 (D. Kan. July 13, 2020) (internal quotation

marks and citations omitted) (emphasis added). A plaintiff can plead one of the following five forms

of a municipal policy or custom: (1) A formal regulation or policy statement; (2) an informal custom

amounting to a widespread practice that is so permanent and well settled as to constitute a custom or

usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the

ratification by such final policy makers of the decisions, and the basis of them, of subordinates to

whom authority was delegated subject to the policymakers' review and approval; (5) the failure to

adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Id.* at *10 (citing *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019)). The 1AC references the third and fifth forms: decisions of a policymaker and failure to train. (Doc. 35, ¶¶ 314, 321).

Pointing to decisions of a policymaker is one way in which a plaintiff can plead an official capacity claim. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). But to do so, a plaintiff must show that the "action was taken with the requisite degree of culpability and must demonstrate a direct causal link" between the action and the deprivation of her rights. *Bd. of Cnty Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). The allegations about Soyez's involvement in the investigation or drafting of warrants are entirely conclusory and need not be accepted as true. (Doc. 35, ¶¶ 96, 118, 167, 338, 340). But in any event, nothing in the 1AC plausibly alleges the requisite state of mind: deliberate indifference. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). Desperate to attribute animus where none exists, Plaintiff concludes, implausibly, that Soyez bore animus because he thought the Record should be more positive. (Doc. 35, ¶ 94). Or Plaintiff tries to suggest that Soyez making two statements that were both true and support dismissal of these claims somehow implicates him in the City's investigation. (Doc. 35, ¶¶ 191-192). None of these allegations rise to the level of deliberate indifference by Soyez. Nor do they indicate that Soyez was the moving force behind any violations of Plaintiff's rights. On the contrary, the 1AC makes it crystal clear this was entirely Cody's investigation.

As for the failure to train claim, "[m]unicipal liability is most tenuous where a claim turns on a failure to train." *George v. Beaver Cnty.*, 32 F.4th 1246, 1253 (10th Cir. 2022) (internal quotation marks and citations omitted). That is because "a municipality's decision not to train its officers rises to the level of an official government policy under § 1983 only when the failure to train amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.*

(citation cleaned up). Ordinarily to allege deliberate indifference in training, one must allege a pattern of violations by untrained employees. *Id.* Aside from conclusory allegations that Soyez failed to train, there are no well-pleaded facts about the training the Soyez did or did not perform. There are no allegations of prior violations. There are no well pleaded allegations suggesting deliberate indifference. There are only conclusions. Thus, Plaintiff fails to adequately allege failure to train.

## II.     Plaintiff fails to adequately allege the existence of a conspiracy under § 1983.

It is not clear from the 1AC if Plaintiff is attempting to assert a conspiracy claim. But if so, Plaintiff fails to plausibly allege that Soyez or Christner engaged in an illegal conspiracy. "[A] conspiracy claim under § 1983 requires the allegations of specific facts showing an agreement and concerted action among the defendants." *Tallie v. Crawford Cnty.*, 2022 U.S. Dist. LEXIS 232720, at *13 (D. Kan. Dec. 28, 2022) (internal quotation marks and citations omitted). A Plaintiff must allege both "specific facts showing an agreement and concerted action among defendants—an agreement upon a common, unconstitutional goal, and concerted action taken to advance that goal." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022). Although an express agreement is not required, participants must "share the general conspiratorial objective." *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021 (internal quotation marks and citations omitted). And "the agreement must be illegal." *Id.* at 1025. "Therefore, proof that defendants formed an agreement or conspired to engage in lawful activities—including lawful investigative activities—would be inadequate to support a § 1983 claim." *Id.*

The only allegations of concerted action between Soyez and the City Defendants is that Soyez "appointed" Christner to assist Cody, discussed Cody's investigation with Cody, spoke once on the phone with Cody, met with Cody after the warrants were executed, and oversaw the return of items that Cody had seized. There are no well-pleaded allegations that Soyez had any illegal agreement with the City or that Soyez intended to violate anybody's rights. Plaintiff has not adequately alleged that Soyez shared any unlawful conspiratorial objective. Plaintiff also fails to allege Christner's involvement

in a conspiracy. Although there are more allegations against Christner, none of them give rise to an inference of a shared conspiratorial motive. There is no suggestion that Christner had any animus or motive to violate Plaintiff's rights. Prior to the execution of the warrants, Christner only assisted Cody in formatting the warrant application, made it clear that it was not his investigation, and noted he would not sign the application. After the warrants were signed by a neutral magistrate, Christner did nothing more than execute it. Conclusory allegations are insufficient to state a conspiracy claim. *Lloyd v. McCausland*, 2023 U.S. Dist. LEXIS 188973, at *11 (D. Kan. Oct. 20, 2023). As are allegations "so general that they encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1247. For these reasons, Plaintiff fails to allege that Soyez and Christner engaged in an illegal conspiracy with the City Defendants.

### III.    Soyez and Christner are entitled to qualified immunity under § 1983.

Absent a conspiracy, the claims against Soyez and Christner in their individual capacities must be based on their conduct, alone. There is a presumption in favor of qualified immunity for public officials acting in their individual capacities, unless Plaintiff proves otherwise. *See Hidahl v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991). Once qualified immunity is asserted, Plaintiff has the burden to meet a two-part test. *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir 2009). She must first establish a defendant violated a federal right. *George v. Newman*, 726 F. App'x 699, 703 (10th Cir. 2018). Next, she must show that the right was clearly established. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).

### A.    Plaintiff fails to state a First Amendment violation.

Count I asserts a "direct violation" of Plaintiff's First Amendment rights against the Sheriff Defendants.[4] It is not clear whether the Tenth Circuit recognizes a cause of action for a "direct" First Amendment violation, or that this claim is distinct from Count II, a retaliation claim that is only

---

[4] Although it is not numbered, these Defendants assume the heading between paragraphs 207 and 208 is Count I.

brought against Soyez.[5] In any event, the Tenth Circuit recognizes two types of First Amendment claims: retaliation and prior restraint. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010); *Berger v. City & Cnty. of Denver*, 2019 U.S. Dist. LEXIS 98643, at *10-11 (D. Colo. June 11, 2029). For the purposes of this motion, these Defendants construe Count I as a prior restraint claim. *Bralley v. Albuquerque Pub. Sch. Bd. of Ed.*, 2015 U.S. Dist. LEXIS 47065, at *10 (D.N.M. Feb. 25, 2015)("[A]n impermissible prior restraint can also be found where news gathering (as opposed to speech) is unreasonably restricted.").

Prior restraint is conduct that restricts or chills speech "**because of its content** before the speech is communicated." *Berger*, 2019 U.S. Dist. LEXIS 98643, at *14 (emphasis added); *McDevitt v. Disciplinary Bd. of the Sup. Ct.*, 1997 U.S. App. LEXIS 3706, at *5-6 (10th Cir. March 3, 1997). Plaintiff does not allege the elements of a formal prior restraint claim. *Dirks v. Bd. of Cnty. Comm'rs*, 2016 U.S. Dist. LEXIS 68510, at *16 (D. Kan. May 23, 2016). To allege an informal prior restraint, Plaintiff must allege that Soyez and Christner "intended to chill protected speech." *Id.* (internal quotation marks omitted). And so, Plaintiff would need to plausibly allege that she planned on engaging in future speech, and that Soyez or Christner acted specifically to prevent that speech. Neither is adequately alleged. There are no well pleaded allegations of any animus by Soyez or Christner against Plaintiff, nor are there allegations suggesting that Soyez or Christner acted for the purpose of preventing future speech by Plaintiff. *Sells v. Upper Pine River Prot. Dist.*, 2021 U.S. Dist. LEXIS 59253, at *13 (D. Colo. 2021) (noting a plaintiff fails to state a prior restraint claim where he "does not allege that he planned to engage in any protected speech . . . ."); *see also Schoolcraft v. City of New York*, 2012 U.S. Dist. LEXIS 128557, at *21-22 (S.D.N.Y. Sept. 7, 2012) (noting that a plaintiff does state a prior restraint claim where the allegations support an inference that defendants intending to restrain plaintiff's speech). The 1AC does not suggest that Christner or Soyez had a specific intent to target Plaintiff because of

---

[5] *Primrose v. Mellott*, 541 F. App'x 177, 181 (3d Cir. 2013).

her future speech, or that Plaintiff intended on engaging in future speech. Lastly, the prior restraint claim should be dismissed because it is based on the same conduct as the retaliation claim—the City's response to protected conduct—and therefore, is duplicative of that claim. *Sodaro v. City & Cnty of Denver*, 629 F. Supp. 3d 1064, 1077-78 (D. Colo. 2022).

Turning to the retaliation claim against Soyez in Count II, to state a retaliation claim, Plaintiff must allege: (1) constitutionally protected activity, (2) an injury that would chill a person of ordinary firmness from continuing to engage in such activity, and (3) that the defendant's actions were substantially motivated as a response to the constitutionally protected activity. *Martley v. Basehor*, 537 F. Supp. 3d 1260, 1267 (D. Kan. 2021). Plaintiff fails to demonstrate the third factor. There are only a few conclusory allegations about Soyez's alleged animus. But those fall well short of plausibly alleging unlawful animus. A bare conclusion that Soyez thought the Record should be more "positive," which has nothing to do with Plaintiff, individually, falls well short of this standard.

Moreover, any retaliation claim against Soyez must be dismissed because there are no allegations of his personal involvement. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). There must be an affirmative link between the defendant's participation and the alleged constitutional violation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Soyez is not alleged to have participated in the investigation of Plaintiff, sought the warrants, or participated in the search. The allegations of his involvement or knowledge of the events are conclusory and not supported by well pleaded facts. Because Soyez did not participate in the investigations or the raids, he cannot be liable for First Amendment retaliation.

**B.    Plaintiff fails to allege a Fourth Amendment violation.**

It is not clear that Plaintiff is asserting a Fourth Amendment claim, as there is not a separately enumerated count for such a claim in the 1AC. But the Sheriff Defendants will address it just in case.

1.  <u>No violation for involvement in drafting warrant.</u>

As set forth above, Plaintiff fails to allege a constitutional violation for Soyez's involvement in drafting the warrant, because allegations of his involvement are conclusory and are not well pleaded facts. As for Christner, although the 1AC goes lengths to exaggerate Christner's involvement, even accepting the 1AC as true, the situation is one in which Christner is not alleged to have conducted any investigation or added any additional substance. He put Cody's words into a search warrant application for Cody to swear to. That is why Christner was not comfortable swearing to the affidavit, and further, advised Cody to seek a warrant only "if he had PC." (Doc. 35, ¶¶ 98-99).

An officer can violate the Fourth Amendment by knowingly or recklessly making false statements in an affidavit if those statements are material to the finding of probable cause. *Hernandez v. Conde*, 272 F. App'x 663, 669 (10th Cir. 2008). Importantly, "[c]oncerning a defendant acting in a non-supervisory capacity, there must cause in fact between the conduct complained of and the constitutional deprivation." *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990). Although direct participation in a Fourth Amendment violation is not always required, a plaintiff must show that a defendant "had **some role in directing or controlling the events** on which the claim is based." *Turner v. Klika*, 2011 U.S. Dist. LEXIS 112257, at *24 (W.D. Okla. Sept. 29, 2011) (emphasis added). Applied in similar cases, Courts have found direct participation by officers who ordered a search or swore out the search warrant affidavit. *Poolaw v. Marcantel*, 565 F.3d 721, 733 (10th Cir. 2009). Likewise, Courts have found direct participation by a prosecutor who provided input, advice, and approval of an unlawful search warrant. *Mink v. Knox*, 613 F.3d 995, 998-99 (10th Cir. 2010). Conversely, direct participation is not adequately alleged where a defendant merely knows about or tacitly approves an allegedly unlawful scheme. *Tachias v. Los Lunas Sch. Bd. of Ed.*, 2022 U.S. Dist. LEXIS 174616, at *29 (D.N.M. Sept. 27, 2022).

Here, the 1AC does not plausibly allege that Christner—and certainly not Soyez—participated in the underlying investigation or provided substantive input to Cody's investigation. Christner put Cody's investigation on paper without double-checking Cody's investigation. Christner did not direct or control the investigation and he did not cause the subsequent events that unfolded. Christner made it clear it was not his investigation or affidavit to sign, and he did not present it for approval. In these circumstances, an officer is not liable for a Fourth Amendment violation. *Compare Hawkins v. Gage County*, 759 F.3d 951, 958-59 (8th Cir. 2014) (finding no violation where defendant officers merely proofread affidavit without providing substantive input) *with Mink*, 613 F.3d at n. 5 (10th Cir. 2010) (noting a plaintiff states a plausible Fourth Amendment claim by alleging that a defendant's input and advice concerning the affidavit and warrant directly caused the alleged constitutional violation).

2.  <u>As alleged, the Sheriff Defendants' conduct was objectively reasonable.</u>

Soyez cannot be held liable for the actual execution of the warrant. He did not personally participate in the execution and had no control or authority over Cody's investigation or search. Nor is Christner liable for executing the warrant in question. In the qualified immunity context, Courts look at the objective reasonableness of a defendant's conduct. As the Supreme Court has instructed:

> Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, **the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith**. Nonetheless, under our precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness. Rather, we have recognized an exception allowing suit when it is obvious that no reasonably competent officer would have concluded that a warrant should issue. The shield of immunity otherwise conferred by the warrant, will be lost, for example, where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

*Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (internal quotation marks and citations omitted) (emphasis added). The burden of establishing this exception "is a high one," because Courts do not expect an officer to question a magistrate's probable-cause determination. *Id.* The warrant was signed

by a neutral magistrate. And so, Plaintiff has the high burden of showing that the warrant was "so lacking" in probable cause or particularity that no reasonable officer could have concluded that a warrant should issue. *Rathbun v. Montoya*, 628 F. App'x 988, 994 (10th Cir. 2015). Importantly, such defects must be "obvious from the face of the warrant" for this exception to apply. *United States v. Pulsifer*, 588 F. App'x 800, 804 (10th Cir. 2014); *Cruz v. City of Albuquerque*, 2019 U.S. Dist. LEXIS 36475, at *59 (D.N.M. March 6, 2019).

The application sought evidence of identity theft and unlawful acts concerning computers. Identify theft is defined to include using personal identifying information[6] to defraud another for some benefit or to subject the victim to harm. K.S.A. 21-6107(a). Unlawful acts concerning computers include accessing, without authorization, any computer system or network. K.S.A. 21-5839(a)(5). Cody attested that Newell did not authorize any person to access her records, and the 1AC asserts that Plaintiff used Newell's name and driver's license information to do just that. (Doc. 1, ¶ 31). Cody further attested that KDOR's website provided an exclusive list of authorized reasons why one can access another's KDOR records. From the face of the warrant, none of the justifications set forth on the KDOR site apply to Plaintiff accessing Newell's records.[7] Cody also suspected that Plaintiff had violated the federal Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.* The DPPA prohibits individuals from knowingly obtaining or disclosing "personal information," which includes one's name, address, driver's license number, and date birth, from a state's motor vehicle records. *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 940 (7th Cir. 2015). And the media has no First Amendment right to obtain "personal information" in violation of the DPPA. *Id.* Rather, the impetus

---

[6] This includes someone's name, birth date, and driver's license number. K.S.A. 21-6107(e)(2).
[7] References to KDOR's after-the-fact statements or Plaintiff's subjective interpretation of various laws are irrelevant; the relevant inquiry is the information known to and relied upon by Christner at the time he executed the signed warrant. *E.g., United States v. Thompson*, 402 F. App'x 378, 382-83 (10th Cir. 2010).

of the DPPA is simple: "to protect the personal privacy and safety of all American licensed drivers." *Id.* at 944; see also *Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 607 (7th Cir. 2012).

Plaintiff used Newell's information to access this very information. Based on the warrant, which Cody swore to, and a neutral magistrate signed, it was reasonable for Christner to rely on its validity and believe that the DPPA may have been violated. From its face, the warrant was not "so lacking" in probable cause that any reasonable officer would know it should not issue. On the contrary, Christner was justified in relying on Cody's attestation, Hudlin's alleged conversations with KDOR, and the magistrate's subsequent issuance of the warrant.

### 3. No violation for exceeding scope of preview search.

Plaintiff also alleges that Christner is liable for conducting a "sham" preview search. The signed warrant required that a preview search be conducted "to exclude from seizure" those digital devices that "have not been involved in the identity theft." Plaintiff alleges that Christner did just that, but adds the entirely conclusory allegations that Christner utilized vague and indistinct words like "vehicle" and "Kansas." (Doc. 1, ¶ 81). "Searches that **grossly exceed the scope** of a search warrant are unconstitutional." *High Plains Livestock, LLC v. Allen*, 2019 U.S. Dist. LEXIS 103523, at *12 (D.N.M. June 19, 2019) (internal quotation marks and citations omitted) (emphasis added). In the civil context, the question is whether a seizure was "not only so far outside the scope of the warrant, but also that a reasonable executing officer would have known as much." *Id.* The 1AC does not contain any well-pleaded facts to meet this burden. Plaintiff simply concludes that it was "obvious" that the preview search was a scam. But conclusory allegations about what a plaintiff believes is obvious are not well-pleaded facts. The example terms given—Kansas and vehicle—plainly relate to the investigation of Plaintiff accessing Newell's information from the KDOR website and comply with the warrant's requirements. The allegations simply do not support a plausible inference that any reasonable officer would have known that Christner exceeded the scope of the warrant.

**C.    The Sheriff Defendants did not violate a clearly established right.**

Turning to the second prong of the qualified immunity analysis, Plaintiff fails to allege that Soyez or Christner violated a clearly established right regarding any of the above constitutional claims. "[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

> A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation. To be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. Although there need not be a case directly on point, an officer cannot be said to have violated a clearly established right unless the right'. contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it.
>
> Courts must not define clearly established law at a high level of generality. Instead, the clearly established law must be particularized to the facts of the case. The dispositive question is whether the violative nature of particular conduct is clearly established. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

*Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018)(citation cleaned up). Starting with Count I, as noted above, it is not even clear that the Tenth Circuit recognizes a cause of action for a direct First Amendment violation, as characterized by Plaintiff. Where there is uncertainty as to whether a constitutional claim is recognized, the law, by definition, cannot be clearly defined. *Reichle v. Howards*, 566 U.S. 658, 668-70 (2012). Additionally, as for both Counts I and II, it is not clearly established that Christner or Soyez violated the First Amendment where there are no allegations or suggestions that Christner was motivated by an unlawful animus or intent to suppress speech, and the only allegations of that nature against Soyez are implausible and conclusory. Indeed, these defendants are aware of no case law indicating that a Sheriff wishing that a newspaper was more positive constitutes unlawful animus. All told, Plaintiff cannot point to a similar case, with allegations similar to those lodged against Soyez or Christner, in which a defendant was found to have violated the First Amendment.

Likewise, it is not clearly established that Soyez or Christner violated the Fourth Amendment. Because there are no well pleaded allegations indicating that Soyez had any personal involvement in the investigation, drafting, or execution of the warrants, he cannot possibly have violated a clearly established right. Moreover, as it relates to Christner, there is no binding precedent in which an assisting officer, who did not conduct the underlying investigation and failed to double-check the investigation of another agency, is liable under the Fourth Amendment for the issuance of that warrant. Nor are there any cases suggesting that it is clearly established that Christner should have known that the warrant was not supported by arguable probable cause. Although Plaintiff alleges that KDOR has since exonerated Plaintiff, KDOR's current position was not known when the warrant was executed.

> In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct. Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff.

*Stonecipher v. Valles*, 759 F.3d 1134, 1141-42 (10th Cir. 2014) (cleaned up). This objective test is not based on 20/20 hindsight: "[q]ualified immunity applies equally to reasonable mistakes of law and fact." *Id.* at 1142. When applying this framework to search warrant cases, the analysis is highly context-dependent, which requires Plaintiff to identify a very similar case to meet her burden. *See Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020). She cannot do so here. There is no precedent that would make it clear that Christner should have known the warrant was facially defective. Indeed, as set forth above, it was not unreasonable to believe the violations of the DPPA or Kansas law had been committed. Finally, it is not clearly established that Christner exceeded the scope of the search warrant by conducting a preview search for terms like "Kansas" and "vehicle" while investigating

Plaintiff accessing another person's driving record on the KDOR website. Soyez and Christner are entitled to qualified immunity on all of the claims asserted against them under § 1983.

### IV.    Plaintiff fails to state a claim under the Privacy Protection Act.

The Privacy Protection Act ("PPA") provides, in relevant part, that

> [I]t shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce.

42 U.S.C. § 2000aa(a). However, the PPA does not impair the search or seizure of such materials if "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a)(1). If the PPA is violated, "[a] person aggrieved by a search or seizure of materials in violation of this act shall have a civil cause of action for damages for such search or seizure." 42 U.S.C. § 2000aa-6(a).

Plaintiff's fails to state a PPA claim. For starters, the items seized were the Record's, not hers. An "aggrieved person" under the PPA is the owner of property seized. *Powell v. Tordoff*, 911 F. Supp. 1184, 1189-90 (N.D. Iowa 1995). Zorn lacks standing to bring this claim. Additionally, the PPA's protections do not apply when the person possessing materials is a criminal suspect, and law enforcement has probable cause. As set forth above, that was the case here. *Pataky v. City of Phoenix*, 2009 U.S. Dist. LEXIS 114037, at *28-29 (D. Ariz. Dec. 7, 2009). Moreover, the PPA provides that "[i]t shall be a complete defense . . . that the officer or employee had a reasonable good faith belief in the lawfulness of his conduct." 42 U.S.C. § 2000aa-6(b). Christner's reliance on Cody's affidavit and the judge's signature of the warrant establish that exception as well. Finally, the PPA claim must fail because Plaintiff does not allege that any Sheriff Defendants were searching for work product materials. The PPA only prohibits searches for or seizures of "work product materials." 42 U.S.C. § 2000aa(a), and "work product materials" are documents that are possessed in anticipation of, and for

the purpose of, being published. 42 U.S.C. § 2000aa-7(b)(1)-(2). Plaintiff alleges the exact opposite. Cody was searching for evidence relating to Plaintiff and the Record accessing Kari Newell's records, as evidenced by the email Meyer had previously sent to Cody. Plaintiff alleges that she had "no intent" to publish the information about Newell. (Doc. 35, ¶ 66). And indeed, the Record chose not to publish anything about Newell's drivers license status. (Doc. 35, ¶¶ 68-69). Although Plaintiff does allege that work product documents were incidentally seized, that allegation fails to state a claim. Incidental seizures do not constitute a violation of the PPA where the primary target of the search was not work product materials. *Times Publ'g Co. v. United States*, 2023 U.S. Dist. LEXIS 203468, at *16-17 (M.D. Fla. Sept. 22, 2023) ("Any PPA materials that may exist on the seized devices were commingled with criminal evidence . . . ."). For these reasons, Plaintiff fails to state a PPA claim against Sheriff Soyez in his official capacity.

## CONCLUSION

For the foregoing reasons, the claims against the Marion County Board of County Commissioners, Sheriff Jeff Soyez, and Detective Aaron Christner should be dismissed with prejudice.

Respectfully submitted,

WATKINS CALCARA, CHTD.

/s/ JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26865
1321 Main Street - Suite 300
P.O. Drawer 1110
Great Bend, Kansas 67530
(620) 792-8231 Fax (620) 792-2775
jkuhlman@wcrf.com
Attorney for Defendants the Marion County Board of County Commissioners, Sheriff Jeff Soyez, and Detective Aaron Christner

**CERTIFICATE OF SERVICE**

I hereby certify that on this  14th day of May, 2024, I electronically filed the above and foregoing Memorandum in Support of Motion to Dismiss by using the CM/ECF system which will send a notice of electronic filing to registered counsel.


/s/ JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26865