DEPEW GILLEN RATHBUN & MCINTEER LC
8301 E. 21st Street North, Suite 450
Wichita, KS 67206-2936
Telephone: (316) 262-4000

## In The United States District Court
## For The District of Kansas

| | | |
|---|---|---|
| PHYLLIS J. ZORN | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 24-CV-2044-DDC-GEB |
| CITY OF MARION, KS, et al., | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

### Response to Defendants Mayfield, Hudlin, and City of Marion's Motion to Dismiss (Doc. 57)

### I.    Introduction

This is a factually and legally complicated case. But for all its complications, at its heart is a very simple proposition: any law enforcement personnel, with a shred of common sense, when faced with the prospect of *raiding a newsroom and seizing all equipment and personal devices of its editor and reporters* would probably wonder if there were constitutional problems with the plan. Such an approach would be considered heavy handed and constitutionally suspect for a regular private business, let alone a newspaper. This is particularly true, if say, the warrant allowing the search had several inaccuracies.  Any reasonable law enforcement personnel would—either by a

simple Google search or better yet, by asking their department's legal counsel—
find out that, yes, there were many constitutional problems with the plan.

In this case, Chief Cody charged ahead with a mixture of bullheadedness
and plain meanness. But just as problematic as Cody's behavior is the cast of
other government actors who failed to speak up and encouraged his rough justice
fever dream. There is Detective Hudlin, who rifled through the MCR's newsroom
and helped seize Zorn's personal cell phone. There is Mayor Mayfield, who
authorized an investigation into the Marion County Record ("MCR") and openly
despised the paper. Cody charged ahead because he knew he had the backing of
his department and his bosses. This was an institutional failure with bad acts by
all the defendants.

## II.    Standard of Review

In reviewing a motion to dismiss, the Court accepts the well-pleaded facts
alleged as true and views them in the light most favorable to the plaintiff. *Clinton
v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023). In addition, the
Court accepts inferences by the plaintiff based on the pleaded facts. *See Matney
v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023). The facts are set
out in the Amended Complaint (Doc. 35).

Because they turn on a fact-bound inquiry, "qualified immunity defenses
are typically resolved at the summary judgment stage" rather than on a motion to
dismiss. *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022) "Asserting a
qualified immunity defense via a Rule 12(b)(6) motion subjects the defendant to

a more challenging standard of review than would apply on summary judgment."
*Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019). At the motion to
dismiss stage, it is the defendant's conduct as alleged in the complaint that is
scrutinized for objective legal reasonableness. *Id.* The Court evaluates "(1)
whether the facts that a plaintiff has alleged make out a violation of a
constitutional right, and (2) whether the right at issue was clearly established."
*Id.*

### III.    Arguments and Authorities

#### a. Zorn stated viable § 1983 claims against Mayfield, Hudlin, and the City under *Twombly*.

As a prefatory matter, the plaintiff finds it strange that the defendants
would categorize the plaintiff's petition as full of "conclusory assertions" given
that the vast majority of the plaintiff's complaint came from the plaintiff's
personal experience during the events, public statements of the defendants and
third parties, and well documented articles published post-raid by the press.
There are cases with constitutional violations that shock the conscience such that
they merit some handwringing. This is one of those cases.

Under Fed. R. Civ. P. 8(a), a complaint must contain a "short and plain
statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.
P. 8(a). Based on this pleading standard, the Supreme Court has explained that a
plaintiff must "plead facts sufficient to show that [the plaintiff's] claim has
substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014).

"The plausibility standard does not require a showing that success is <u>probable</u>, but it 'asks for more than a <u>sheer possibility</u> that a defendant has acted unlawfully.'" *Byers v. Smith*, No. 5:20-CV-03107-HLT, 2020 WL 6077420, at *2 (D. Kan. Oct. 15, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). After *Twombly/Iqbal*, the Supreme Court specifically rejected the idea that there is a heightened pleading requirement for Section 1983 cases:

> In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability"). *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).

The defendants' combined conduct created a bounty of § 1983 claims. Within the same case, there are facts supporting 1983 claims connected to retaliatory conduct for First Amendment protected conduct, claims for searches and seizures based on defects within the warrants, claims for going beyond the scope of the issued warrant, failure to train claims, and more.

Defendants Mayfield, Hudlin, and the City of Marion are sufficiently on notice of the claims against them. In addition to failing to supervise Cody, Mayfield appears to have helped instigate the conduct out of personal animus against Zorn and the other reporters at the Marion County Record. Hudlin assisted in Cody's investigation and then failed to intervene to stop additional constitutional violations during the search. The actions of Mayfield and Cody

create *Monell* liability for the City because they set municipal policy in regards to the raid and during the search. The conduct of its police officers—particularly in regard to warrant preparation—also indicate that the City failed to train its officers on basic constitutional issues.

### b. Zorn's First and Fourth Amendment claims against Defendant Mayfield are not barred by Qualified Immunity.

Defendants' arguments on Mayfield are that (1) plaintiff has not pled sufficient facts showing his involvement and (2) that the law was not clearly established. The facts surrounding Mayfield's decision to authorize an investigation into Herbel and the local paper are troubling. Mayfield openly disliked the newspaper and its reporters. He also disliked his Vice-Mayor. When the Newell KDOR letter came up, he used it as an excuse to hit back at all of them. He lied to Newell about Herbel's planned use of the letter and implied he wanted her to be convicted of a crime. The same day, he authorized a criminal investigation into Herbel and the Marion County Record despite the facts suggesting that both parties had received the information legally. This is retaliatory behavior affecting the First Amendment rights of the plaintiff, the Marion County Record, and Herbel. Following this authorization, he attended a City Council meeting during which he did not set the record straight when Newell repeated a lie Chief Cody had told her that the paper had provided Herbel with a copy of the KDOR letter illegally. Mayfield's failure to correct Newell constitutes a

ratification of Cody's lie to Newell. A summary of a statement from Newell was included in the search warrant affidavit.

Plaintiff pled facts supporting a cause of action for a § 1983 failure to supervise claim. *See, Rustgi v. Reams*, 536 F. Supp. 3d 802, 821 (D. Colo. 2021) (noting that supervisors may be liable for the acts of subordinates). Supervisory claims have "three elements ... to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind." *Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014). Under the City code, Mayfield has "superintending control of all officers and affairs of the City." Code of the City of Marion, Kan. § 1-205(a). He had personal involvement in the decision to retaliate against Zorn and the Marion County Record and personal animus for doing so. His behavior with Newell and during the City Council meeting "set in motion a series of events that [he] knew or reasonably should have known would cause others to deprive the plaintiff of [her] constitutional rights." *Dayton v. City & Cnty. of Denver, Colorado*, 649 F. Supp. 3d 1124, 1140 (D. Colo. 2023)

When it comes to extreme circumstances—such as authorizing criminal investigations of reporters and newspapers because you think they should have a more positive spin on the local economy—"general constitutional principles established in the caselaw may give reasonable government officials fair warning that their conduct is constitutionally or statutorily unlawful." *Frasier v. Evans*, 992 F.3d 1003, 1014–15 (10th Cir. 2021). It is settled law that retaliatory criminal

prosecution for First Amendment protected conduct can give rise to a § 1983 action. *Douglass v. Garden City Cmty., Coll.*, No. CV 20-2076-KHV, 2021 WL 2338247, at *8 (D. Kan. June 8, 2021).

### c. Zorn's First and Fourth Amendment claims against Hudlin are not barred by Qualified Immunity.

Hudlin has argued a Nuremberg defense for why he should be protected under qualified immunity. In doing so, he relies on cases such as *Wigley v. City of Albuquerque*, 567 F. App'x 606 (10th Cir. 2014), where plaintiffs sued members of a SWAT team that were sent to the wrong house. The problem with this argument is that Hudlin was more connected to this than simply being part of a search team. The Marion police department only has between three to five officers on staff at any time. Hudlin assisted with the investigation (Amended Complaint ¶ 91). His conduct at the raid was also problematic. Hudlin guided Cody to the newspaper's investigation file and used coded language that suggested he knew it was improper to review the information. It does not matter if Hudlin was just following orders—he had the context to know that what he was assisting with was constitutionally improper and the facts suggest he had greater involvement leading up to the raid than he is letting on.

Hudlin's proximity to Cody's conduct also gives rise to a § 1983 claim for failure to intervene: "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces*,

535 F.3d 1198, 1210 (10th Cir. 2008). In order for liability to attach, there must

have been a realistic opportunity to intervene to prevent the harm from

occurring. *Id.* Whether an officer had sufficient time to intercede or was capable

of preventing the harm being caused by another officer is an issue of fact for the

jury unless, considering all the evidence, a reasonable jury could not possibly

conclude otherwise. *Id.* The Tenth Circuit and other appellate courts have

recognized that a failure to intervene claim may arise in the context of search and

seizure. *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022). Hudlin had the

proximity and the opportunity to intervene during the raid and ultimate seizure

of Zorn's phone.

### d. Zorn has stated a viable § 1983 conspiracy claim against the individual defendants.

A § 1983 conspiracy claim requires the plaintiff to show (1) the defendant

conspired with others to deprive him of a constitutional right; (2) at least one of

the alleged co-conspirators engaged in an overt act in furtherance of the

conspiracy; and (3) the overt act injured the plaintiff. *Bledsoe v. Carreno*, 53

F.4th 589, 601 (10th Cir. 2022). The plaintiff is not required to show that each

participant knew the exact limits of the illegal plan, but the evidence must be

sufficient to support a conclusion that the defendants reached an agreement to

deprive the plaintiff of constitutionally guaranteed rights.

This case and motion to dismiss bears some similarity to *Douglass v.*

*Garden City Cmty., Coll.*, No. CV 20-2076-KHV, 2021 WL 2338247, at *8 (D.

Kan. June 8, 2021). In that case, a university student alleged a § 1983 conspiracy claim after being intimidated and detained by law enforcement in connection to Title IX complaints. *Id.* The plaintiff alleged that prior to the incident, a detective had a series of meetings with the college president. In declining to dismiss the plaintiff's conspiracy claim, Judge Vratil wrote:

> The law in the Tenth Circuit is clearly established that retaliation for exercising constitutionally protected rights under the First Amendment to the Constitution violates Section 1983. A reasonably competent public official would necessarily know that such retaliatory behavior violated plaintiffs' First Amendment rights. *Id.* (internal citations omitted).

In this case, the actions of the defendants appear specifically targeted to punish reporters like the plaintiff for exercising their free speech and free press rights. There is Mayfield authorizing (and presumably, meeting with) Cody to conduct a criminal investigation of the newspaper, despite the overwhelming facts suggesting that the paper had come by the information legally. There is Cody's lies to Newell about the investigation which resulted in her verbally assaulting the paper's editor at a public meeting. And there is the documented conduct of Cody and Hudlin on the scene where they were clearly enjoying tormenting the plaintiff and the other members of the press. This is not an exhaustive list, but rather a sampling of the many indicia in the pleaded facts that there was an agreement among the defendants to infringe on their First Amendment rights.

### e. Zorn's theory of recovery against the City of Marion states a viable claim.

The United States Supreme Court established five ways that a plaintiff can show that a municipal policy or custom lead to the constitutional violation:

1.      There was a formal regulation or policy statement;

2.      There was an informal custom amounting to a widespread practice that that was permanent/well settled as to constitute custom or usage with the force of law;

3.      There was a decision by an employee with final policymaking authority;

4.      There was a ratification by final policy makers; or

5.      There was a failure to train caused by deliberate indifference. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

The plaintiff has alleged facts supporting at least two *Monell* scenarios: (1) a decision by an employee with final policymaking authority and (2) failure to train.  As outlined above, Mayfield had "superintending control of all officers and affairs of the City" under the City code. Code of the City of Marion, Kan. § 1-205(a). The City code also gave the chief of police the "power to make such rules and regulations as may be necessary for the proper and efficient conduct of the department." *Id*. § 10-103. Mayfield and Cody were employees with final

policymaking authority and as such, their actions and the actions of the other
Marion County police officers, were taken pursuant to municipal policy.

Failure to adequately train police officers can also be a source of *Monell*
liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed.
2d 412 (1989). No one involved in this illegal raid appears to have raised
questions about constitutional protections for the press despite that it would
seem fairly intuitive to the average person. This failure to train may well have
been deliberate indifference given that Mayfield posted on Facebook that, "The
real villains in America are radical journalists...."

Failure to train could also apply to the constitutional violations connected
to the affidavit used to support the search warrant and the seizure of Zorn's
phone. The affidavits in this case contain critical errors that suggest the Marion
County police either intentionally misled the court or were grossly negligent in its
preparation. When an officer makes a false statement in a search warrant
affidavit knowingly or with reckless disregard for the truth, it is a *Franks v.
Delaware* § 1983 violation. *Franks v. Delaware*, 438 U.S. 154, 154 (1978). If the
statements were made with reckless disregard for truth, it shows that the City of
Marion failed in its duty to train its officers on the constitutional requirements
for search warrant affidavits—one of the most basic functions that a police
department has. In some ways, this is the more concerning constitutional
violation if a failure to train led to the false statements. Marion County may not

raid another newsroom in the near future, but they are likely to ask for a search warrant in the course of regular police work.

### f. Does Plaintiff's PPA claim against the City state a viable claim?

The PPA prohibits the government from seizing "work product materials" intended for publication. *See* 42 U.S.C. § 2000aa(a). Work product materials are materials the author intends to communicate to the public that contain the authors' impressions, opinions, conclusions, or theories. *See* 42 U.S.C. § 2000aa-7(b). The act also bars seizure of "documentary materials," including photographs, films, or tapes. *See* 42 U.S.C. §§ 2000aa(b) & 2000aa-7(a). Excluded from the PPA's definitions of "documentary materials" and "work product materials" is "contraband or the fruits of a crime or things otherwise criminally possessed." 42 U.S.C. § 2000aa-7.

Defendants' PPA argument is in three parts. First, the defendants argue that Zorn lacks standing because the defendants seized work computers owned by the Marion County Record. Second, defendants argue that the officers were not looking for work product in Zorn's possession, but rather the referenced KDOR letter. Third, they are relying on the "criminal suspect" exception to the PPA under 42 U.S.C. § 2000aa.

These arguments generally fail to recognize that Chief Cody and the Wild Bunch also seized Zorn's personal cell phone. Zorn used this cell phone for personal and work purposes and it contained documentary materials unrelated to

Newell's driving records. More importantly, defendants overly narrow the scope of the PPA's application. For example, in the case of *Klitzman, Klitzman & Gallagher v. Krut*, the Third Circuit examined the application of 42 U.S.C. § 2000aa-11 of the PPA to a raid of a private law firm. 744 F.2d 955, 961 (3d Cir. 1984). In that case, federal agents suspected a lawyer was defrauding insurance companies by inflating medical bills in personal injury cases. As part of their investigation, the agents seized almost all of the client files of the firm.

Client files do not belong to the lawyer. Client files belong to clients. Moreover, many of these files were not the specific evidence that the agents were seeking. Despite this, the Third Circuit found that the PPA's protections for "documentary materials" applied and criticized the warrant's overreach:

> Congress has recognized that privacy interests are implicated when the government indiscriminately uses search warrants to obtain documentary evidence. The Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa to 2000aa−12, is applicable when law enforcement agents attempt "to obtain documentary materials in the private possession of a person when the person is not reasonably believed to be a suspect in such offense ...." 42 U.S.C. § 2000aa−11(a). ...[T]his statute evidences a special concern for privacy interests in cases in which a search for or seizure of documents would intrude upon a known confidential relationship, such as that between a lawyer and client. Only one lawyer in the firm, Charles Klitzman, and one employee, Robert O'Marra, were the focus of the postal inspectors' investigation, and the inspectors directed this investigation to only one aspect of Charles Klitzman's practice—representation in personal injury cases. *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 961 (3d Cir. 1984).

The defendants' warrant did not just seize documentary and work product material connected to the Newell investigation, but other material connected to Zorn's reporting. As such, she has standing to support a PPA claim. Finally, the

suspect exception is inapplicable to this case because Zorn committed no crime and was not reasonably considered a suspect. And even if Zorn's behavior was unlawful, a cause of action would still exist for the work product and documentary materials seized unrelated to the Newell investigation.

## IV. Conclusion

Defendants Mayfield and Hudlin may have played a smaller role in this drama than Chief Cody, but their behavior nevertheless exacerbated the situation. Government agents and supervisors cannot sit idly by while others infringe on the constitutional protections of the public. They certainly cannot encourage additional violations without incurring liability. The Court should also reject attempts to dismiss claims against the City of Marion. The majority of the plaintiff's constitutional claims were the result of decisions by employees with final policymaking authority. In addition, much of this case could have been prevented if Marion's Police Department had been trained to recognize First Amendment protection issues or complying with the requirements for preparing and lawfully executing warrants. Defendants Mayfield, Hudlin, and the City are on notice of the § 1983 claims asserted against them.

Respectfully submitted,

DEPEW GILLEN RATHBUN & MCINTEER LC

/s/Randall K. Rathbun
Randall K. Rathbun #09765
8301 E. 21st Street N., Suite 450
Wichita, KS 67206-2936
(316) 262-4000
Randy@depewgillen.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of June, 2024, the above and foregoing

**Response to the Defendants Mayfield, Hudlin and City of Marion's Motion**

**to Dismiss (Doc. 57)**  was filed via CM/ECF and notice sent to:

Jeffrey M. Kuhlman
Watkins Calcara Chtd.
1321 Main Street, Suite 300
PO Drawer 1110
Great Bend, KS 67530
*Attorneys for Defendants Soyez, Christner, Marion Board*

Edward Keeley
Jennifer Hill
McDonald Tinker PA
300 West Douglas, Suite 500
PO Box 207
Wichita, KS 67202
*Attorneys for Defendants Cody, City of Marion, et al*

/s/Randall K. Rathbun
Randall K. Rathbun #09765