IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PHYLLIS J. ZORN, )<br>)<br>Plaintiff, )<br>vs. )  Civil Action No. 2:24-cv-2044-DDC-GEB<br>)<br>GIDEON CODY, et al. )<br>)<br>Defendants. )<br>) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT GIDEON CODY**

Defendant Gideon Cody, by and through his attorneys, Edward L. Keeley and Jennifer M. Hill of McDonald Tinker PA, submit this Reply memorandum in support of Cody's motion to dismiss filed in this case pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs' First Amended Complaint was filed on April 8, 2024. (Doc 35) This Defendant filed his motion to dismiss on May 17, 2024. (Doc 60, 61) Plaintiffs' response opposing dismissal was filed on June 18, 2024. (Doc 80)

Defendant Cody shows the Court that Plaintiff's arguments are without merit and are indeed insufficient to prevent dismissal for several reasons. This Defendant is entitled to dismissal because of qualified immunity. Cody is also entitled to dismissal because Zorn's §1983 claims fail to state any viable cause of action as a matter of law.

**I.  ZORN ADMITS THE RELEVANT FACTS WHICH ESTABLISH CODY'S DEFENSES**

In her Response brief, Plaintiff admits the facts which show conclusively that her actions violated federal law (the DPPA) *and* State criminal law (K.S.A. 21-5839(a)(5) and K.S.A. 21-6107(a)). Zorn admits that she received Newell's KDOR letter from Pam Maag which contained the private information of Newell. Then Plaintiff states: "Ms. Zorn, as a reporter was not about to take the letter (from Maag) without verifying it on the KDOR website, which she did (with

1

Newell's personal information that Zorn already had). (Doc. 80 at 4) Thus, Zorn does not deny using the KDOR website to obtain Newell's private letter from KDOR even though Zorn already had Newell's letter.

Zorn's only excuse is that she wanted "verification". However, why would Zorn need to "verify" Newell's personal information (full name, address, driver's license number and date of birth) which Zorn already had except to use that information in some way? She knew her boss, Eric Meyer, had already verified that Newell had a DUI and a suspended driver's license using the KDOR website. (Doc 35 at 4-5) Zorn also knew she had not been authorized by Newell to obtain the KDOR letter and Plaintiff does not contend otherwise. Thus, Zorn had no permissible reason under federal or state law to obtain Newell's private letter (with confidential personal information) from KDOR. In today's world of identity theft and required cyber security, how could Zorn or anyone else reasonably believe that an individual's private information (date of birth, etc.) stored on a third-party's computer system is publicly accessible as an open record? *See* Fed. R Civ. P. 5.2 (court system privacy protection rules).

## II.  ZORN ERRONEOUSLY ARGUES THAT SHE DID NOT VIOLATE THE DPPA

Plaintiff argues that the Driver's Privacy Protection Act (DPPA) is merely a federal law which had no application to her accessing and obtaining Newell's KDOR letter from the KDOR website. The legal application of the DPPA under these facts is purely a question of law for this Court. Defendant Cody submits that the DPPA was certainly applicable to Zorn's actions whether she realized it or not and prompted Cody's initial investigation regarding the breach of Newell's privacy.

First, Zorn argues that she did not obtain Newell's "personal information" from KDOR "because she already had the information which allowed her to log into the website." (Doc. 80 at

2

10) The DPPA, however, clearly does not provide an exception to its rigid standard of confidentiality for Newell's personal information simply because someone (other than Newell) already has Newell's private information. Each distinct occasion that Newell's personal information is accessed from the KDOR website must be specifically permitted by the DPPA. *Maracich v. Spear*, 570 U.S. 48, 74 (2013).

Plaintiff also argues that the "status" of Newell's driver's license (i.e., suspended because of a DUI) is not protected personal information under the DPPA. (Doc. 80 at 10) That is true. However, Zorn (through Meyer) already had that publicly accessible information. Moreover, Zorn originally received the KDOR letter from Maag and should have known that it contained Newell's personal information which is DPPA protected from disclosure by KDOR. Zorn's ignorance of the DPPA, if any, is no defense. *U.S. v. Hastie*, 854 F. 3d 1298, 1305 (11th Cir. 2017).

Zorn next changes course and argues that the KDOR letter comes within the permissible DPPA exception for "use specifically authorized under the law of the State" and "is related to the operation of a motor vehicle or public safety." (Doc. 80 at 11) The problem with that argument is that Kansas law did *not* specifically authorize Zorn to obtain the KDOR letter. Plaintiff erroneously relies on K.S.A. 74-2012 (a)(1) & (b). But that statute certainly does not "specifically" authorize obtaining Newell's letter from KDOR. That statute merely provides that certain driver's license records are "subject" to the Kansas Open Records Act (KORA). However, KORA then expressly protects the confidentiality of records which are prohibited from disclosure by federal law. 45 K.S.A. § 221 (a)(1). Thus, Zorn did not come within the "state law" exception in the DPPA.

Zorn further argues that she obtained the KDOR letter from the website "for use in connection with matters of motor vehicle or driver safety." (Doc. 80 at 12) That argument would turn the DPPA's confidentiality protections on their head and allow anyone to obtain Newell's

3

address, driver's license number, and date of birth by merely claiming their purpose was to determine whether Newell was a "risk to other drivers". Newell's DUI and suspended license *is* an open record under the DPPA and was already known by Zorn and Meyer. Newell's private information was protected from further access, however, by the DPPA because of Zorn's admitted improper purpose. *McDonough v. Anoka County*, 799 F.3d 931, 944-945 (8th Cir. 2015)

### III.    DEFENDANT CODY HAS QUALIFIED IMMUNITY REGARDING ZORN'S FOURTH AMENDMENT CLAIMS

Plaintiff denies that Cody had probable cause to believe Zorn had violated the two Kansas criminal statutes referenced in his search warrant application. However, Plaintiff does not even discuss the elements of those crimes or explain why Cody did not at least have arguable probable cause for them which is all he needs for qualified immunity. *Hoskins v. Withers,* 92 F. 4th 1279, 1289 (10th Cir. 2023)

Even in the absence of any DPPA violation by Zorn, Cody had at least arguable probable cause to believe that Zorn knowingly and without authorization (from Newell or any federal or state law) accessed the KDOR computer system to obtain Newell's KDOR letter in violation of K.S.A. 21-5839(a)(5). Cody knew based on Officer Hudlin's communications with KDOR that a person identifying herself as "Phyllis Zorn" had downloaded Newell's KDOR letter from the website. (*See* Doc 61 at 9; Doc. 61-3) Cody also knew based on Newell's written statement that Eric Meyer admitted Zorn had downloaded the letter from KDOR. (*See* Doc 61 at 9; Doc. 61-6) Thus, Cody had at least arguable probable cause for a possible violation of K.S.A. 21-5839(a)(5) regarding computer misuse. *Stonecipher v. Valles*, 759 F. 3d 1134, 1141 (10th Cir. 2014)

Moreover, Cody had at least arguable probable cause to believe Zorn obtained Newell's personal identifying information or a document containing same with the intent to defraud KDOR (by misrepresenting Zorn's purpose) for the benefit of Zorn's newspaper in violation of K.S.A.21-

4

6107(a). Alternatively, Cody had at least arguable probable cause to believe Zorn acted with the illegal intent to misrepresent Newell (i.e., steal her identity) to cause Newell economic harm (damage to Newell's reputation and business) which is also a violation of K.S.A. 21-6107(a). Thus, based on Hudlin's information from KDOR and Newell's written statement, Cody also had at least arguable probable cause for a possible violation of K.S.A. 21-6107(a) regarding identity theft.

*Stonecipher*

Plaintiff further contends that Cody "lied" in his affidavit when he stated his belief that Zorn "obtained" the letter from the KDOR website. (Doc 80 at 13) According to Plaintiff, Zorn "obtained" the letter from Maag but not from KDOR. (*Id.*) But the facts admitted by Plaintiff show that Zorn "obtained" the letter from both Maag *and* from KDOR. *McDonough* Cody didn't "lie" or misrepresent the facts to Judge Viar. (*See also* Doc 61 at 25-26)

With respect to the execution of the search warrant, Zorn argues that the contemplated "preview search" of electronic devices was not completed. (Doc 80 at 14) However, Plaintiff does not even try to distinguish the cases relied upon by Cody to establish qualified immunity regarding this claim. *See U.S. v. Hargus*, 128 F.3d 1358, 1363 (10th Cir. 1997); *High Plains Livestock, LLC v. Allan,* 2019 WL 25243223 at 4-5 (D. N. Mex); *U.S. v. Gimmett,* 2004 WL 3171788 at 4 (D. Kan.).

Zorn also argues that the "standing" issue with respect to the search and seizure of her work computer is a fact question. (Doc 80 at 12) However, Plaintiff admits that computer is owned by her newspaper employer. (*Id.*) Moreover, Zorn does not make any allegation in her First Amended Complaint that she herself had any expectation of personal privacy in data stored on that computer. Thus, she lacks standing to base a Fourth Amendment claim on the search and seizure of her work computer. *Rakas v. Illinois*, 439 U.S. 128, 133-134 (1978).

5

IV. **DEFENDANT CODY HAS QUALIFIED IMMUNITY ON ZORN'S FIRST AMENDMENT CLAIMS**

Plaintiff contends that *Irizarry v. Yehia*, 38 F. 4th 1282, 1288 (10th Cir. 2022), defeats Cody's qualified immunity defense to Zorn's First Amendment claims. However, *Irizarry* is easily distinguished. In that case, the court held it was clearly established that a journalist had a First Amendment right to film police performing their duties in public. *Id.* at 1296. Obviously, *Irizarry* does not satisfy the "high degree of specificity" requirement in order to overcome a qualified immunity defense. *Mullenix v. Luna*, 136 S. Ct. 305, 305 (2015).

Zorn also relies on *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978). However, the *Zurcher* court actually upheld the constitutionality of a search warrant executed at a newspaper office. *Id.* at 564. The Supreme Court held that the First Amendment did not prohibit such a search. *Id.* at 567-568. The *Zurcher* case actually supports Cody's qualified immunity defense. *Id.*

Zorn further admits that her retaliation theory is based on Cody's alleged retaliation against the newspaper and not against her personally. (Doc. 80 at 17) That theory clearly fails to state a viable claim because to be actionable the alleged retaliation must have been a response to Zorn's own protected conduct, not to her employer's First Amendment activity, *Smith v. Platti*, 258 F.3d 1167, 1178 (10th Cir. 2001); *Johnson v. City of Wichita*, 2024 WL 474591 at 5 (D. Kan.)

V. **ZORN HAS NOT STATED A VIABLE CONSPIRACY CLAIM AGAINST CODY**

In her response brief, Plaintiff has asserted that she alleged sufficient facts to establish a conspiracy, particularly among Cody, the Sheriff, and Detective Christner. (Doc 80 at 19-20) Zorn argues that she alleged Cody and the Sheriff met on August 8 (before the search warrant execution) regarding their concern that the newspaper was about to disclose Kari Newell had been driving around town with a suspended drivers license. (*Id.*) Next Detective Christner (assigned by the

6

Sheriff to assist Cody) drafted the search warrant for the newspaper office and forwarded it to Cody. (*Id.*) Then on August 10, Cody used Christner's draft to prepare Cody's search warrant application. (*Id.*) The next day (August 11), members of the Police Department and Sheriff's Office executed the search warrant on the newspaper office. (*Id.*) During the search, the Sheriff allegedly directed Cody to seize all of the electronic devices listed in the search warrant without completing a "preview search" on them. (*Id.*) After the search, Cody went to the Sheriff's Office to "debrief" the Sheriff. (*Id.*)

However, these alleged facts fall far short of showing a) an agreement, b) to achieve a general unlawful objective relating to Zorn, c) which resulted in the actual violation of Zorn's constitutional rights. *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-1228 (10th Cir. 2010). Thus, Zorn has not stated a viable §1983 conspiracy claim against Cody. *Id.*

                Respectfully submitted:

                /s/Edward L. Keeley
                Edward L. Keeley, #09771
                Jennifer M. Hill, #21213
                MCDONALD TINKER PA
                300 West Douglas Avenue, Suite 500
                Wichita, Kansas 67202
                T: (316) 263-5851; F: (316) 263-4677
                E: ekeeley@mcdonaldtinker.com
                E: jhill@mcdonaldtinker.com
                *Attorneys for Defendant Gideon Cody*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 12th day of July 2024, a true and correct copy of the above and foregoing **Reply in Support of Motion to Dismiss By Defendant Gideon Cody** was electronically filed with the United States District Court via the CM/ECF system, which will provide electronic notice to all attorneys of record as follows:

Jeffrey L. Kuhlmann
WATKINS CALCARA, CHTD.
1321 Main Street – Suite 300
P.O. Drawer 1110
Great Bend, Kansas 67530
Tel: (620) 792-8231
Fax: (620) 792-2775
Email: jkuhlman@wcrf.com
*Attorneys for Defendants The Board of County Commission of Marion County, KS, Sheriff Jeff Soyez, Aaron Christner*

Randall K. Rathbun
DEPEW GILLEN RATHBUN &
MCINTEER LC
8301 E. 21st Street N., Suite 450
Wichita, Kansas 67206-2936
T: (316) 262-4000
Email: randy@depewgillen.com
*Attorney for Plaintiff*

/s/Edward L. Keeley
Edward L. Keeley, #09771