## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PHYLLIS J. ZORN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 24-2044-DDC-GEB** |
| ) | |
| **CITY OF MARION, KANSAS,** ) | |
| **GIDEON CODY,** ) | |
| **ZACHARIAH HUDLIN,** ) | |
| **JEFF SOYEZ, and** ) | |
| **AARON CHRISTNER,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Phyllis J. Zorn's Motion To Amend Complaint ("Motion") (**ECF No. 90**). For the reasons outlined below, the undersigned Magistrate Judge **GRANTS** Plaintiff's Motion.

## I.    Background[1]

Plaintiff is a reporter for the Marion County Record, (the "Record") a weekly newspaper published in Marion, Kansas. She sued Defendants City of Marion, Kansas ("City"); former Mayor David Mayfield ("Mayfield"); former police chief Gideon Cody ("Cody"); acting police chief Zachariah Hudlin ("Hudlin"); Board of County Commission of Marion County, Kansas ("Board"); Sheriff Jeff Soyez ("Soyez"); and Detective Aaron

---

[1] The facts are taken from Plaintiff's Amended Complaint (ECF No. 35) unless otherwise indicated. This background information should not be construed as judicial findings or factual determinations.

Christner ("Christner") regarding their involvement in a police raid of the Record's office on August 11, 2023, which Plaintiff claims was unlawful. It should be noted, the facts alleged by Plaintiff have been set out in length by the District Judge in his Memorandum and Order granting in part and denying in part Defendants' motions to dismiss[2] and will not be reiterated at length here. However, a highly summarized recitation of the  facts as pled, is necessary for consideration of this Motion.

Plaintiff alleges the City was searching for a new police chief in or around April 2023. Soyez was friends with Cody from when he was on the Kansas City, Missouri Police Department, and he encouraged  Cody to apply for the position; which he did. The Record reported Cody was a candidate, and the Record began receiving tips regarding him which led to the commencement of an investigation into Cody's background. Mayfield offered Cody the position. When Cody learned of the investigation into his background he was angry and suggested Plaintiff should leave the Record, and he would invest in a more positive newspaper. Plaintiff disregarded Cody's suggestion which made him angry at her personally.

In August 2023, Plaintiff received a message on Facebook from a resident of the City, indicating a local business owner, Kari Newall ("Newall"), had been driving on a suspended driver's license following a DUI conviction. Plaintiff confirmed the conviction and license suspension on the Kansas Department of Revenue's ("KDOR") public website using information provided by an informant. Eric Meyer ("Meyer"), an owner of the

---

[2] *Zorn v. City of Marion, Kansas*, 774 F.Supp.3d 1279, 1297-1302 (D. Kan. 2025).

Record, elected not to publish a report regarding Newall's conviction and her driving on a suspended license, but on August 4, 2023 he emailed Cody and Soyez alerting them a confidential source had provided the paper with a letter from KDOR to Newall regarding the steps she would need take to get her license reinstated. While not naming Newell, the email indicated their source alleged local law enforcement was aware this businesswoman had been driving without an active license.

Also on August 4th, Marion Vice Mayor Ruth Herbel ("Herbel") emailed the City Administrator providing a screenshot of the KDOR letter to Newell. This email was forwarded on to Mayfield and other City Council members on August 7, 2023. The City Administrator indicated the police department and Cody would not look into this issue. But Mayfield, who the Record had written unflattering articles about, had a different idea.

Mayfield and a council member contacted Newall telling her Herbel learned of her DUI and falsely claimed Herbel intended to use the DUI conviction to oppose Newell's application for a liquor license at a local restaurant which would come before the council later that day. Mayfield told Newell a reporter at the Record had stolen her identity and provided Herbel with a copy of her driving record. When Newell appeared before the City Council regarding her liquor license she repeated Mayfield's false claim the Record had illegally obtained her driving record. Meyer, who was covering the meeting for the Record, disputed this claim. Newell indicated she would take the issue to the County Attorney.

Mayfield overruled the City Administrator and authorized Cody to begin an investigation into the Herbel and the Record based upon his authority of "superintending

control of all officers and affairs of the city" pursuant to city code. On August 7, 2023 Hudlin, at the direction of Cody, contacted the KDOR. The following day Cody met with Soyez who shared Cody's disdain for the Record and planned to "take down the Marion County Record."

After discussion with Cody, Christner prepared an application for a search warrant for the Record. Although he drafted it, Christner indicated he was unwilling to sign the application and he had not conducted the investigation which he set out in the application. On August 10, 2023, Cody, using Christner's draft, prepared search warrant applications. The applications falsely alleged the Driver's Protection Act applied to the KDOR letter and, they indicated the Record lied about the reasons it sought the driving record. Using the applications, the search warrants were prepared and taken before the Magistrate to be approved.

On Friday, August 11, 2023, Cody, with local law enforcement officers, conducted raids on the Record office; the home of the Record's owners, Joan and Eric Meyer; and the home of Herbel. Cody, Hudlin, and Christner were involved in the raid on the Record's office. Cody and Soyez seized Plaintiff's, Deb Gruver's, and Eric Meyer's computers and the network file server effectively shutting down the Record. Additionally, Cody directed Hudlin to seize Plaintiff's cell phone. And Cody interviewed the Record staff individually.

Following the raids and interviews, Cody went to the Sheriff's Office to debrief Soyez. Two days after the raids, the KBI announced it would take over the investigation into the raids. And five days later, the Marion County Attorney filed a motion to release the evidence seize during the raids and issued a press release finding insufficient evidence

existed "to establish a legally sufficient nexus" between any crime being investigated and "the places searched and items seized."

Plaintiff filed her Complaint in this matter in February 2024. All Defendants filed Motions to Dismiss[3] which were found as moot after Plaintiff filed an Amended Complaint.[4] All Defendants again filed Motions to Dismiss Plaintiff's Amended Complaint.[5] All Motions to Dismiss the Amended Complaint were granted in part and denied in part.[6] The District Judge dismissed all claims against Mayfield;[7] any Fourth Amendment claims against Soyez and Hudlin based upon the warrant's procurement;[8] any Fourth Amendment claim against Cody based upon the oath-or-affirmation requirement;[9] any Fourth Amendment claim against Christner based upon the execution of the warrant;[10] any Fourth Amendment claim based upon the seizure of Plaintiff's workplace computer;[11] all conspiracy claims against Hudlin and Christner;[12] all claims against the Board;[13] and all municipal claims based upon a failure to train.[14] However, all other Fourth Amendment

---

[3] Defendants Board of County Commission of Marion County, Kansas, Aaron Christner and Jeff Soyez – ECF No. 20; Defendant Gideon Cody – ECF No. 22; and Defendants Zachariah Hudlin, City of Marion, Kansas, and David Mayfield – ECF No. 26.

[4] Order – ECF No. 41.

[5] Defendants Board of County Commission of Marion County, Kansas, Aaron Christner and Jeff Soyez – ECF No. 53; Defendants Zachariah Hudlin, City of Marion, Kansas, and David Mayfield – ECF No. 57; and Defendant Gideon Cody – ECF No. 60.

[6] Order – ECF No. 88; *Zorn v. City of Marion, Kansas*, 774 F.Supp.3d 1279 (D. Kan. 2025).

[7] *Zorn*, 774 F.Supp.3d at 1321.

[8] *Id. at 1322.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 1339.

[12] *Id.* at 1330.

[13] *Id.*

[14] *Id.*

claims,[15] including Plaintiff's claims based upon the seizure of her phone[16] and against Cody and Christner based upon warrant procurement,[17] along with the direct First Amendment claim,[18] retaliation claims against Cody and Soyez,[19] conspiracy claims against Soyez and Cody,[20] municipal liability claim based upon Soyez and Cody as policymakers,[21] and Privacy Protection Act claims[22] survived.

Judge Crabtree in his Order on the Motions to Dismiss considered whether the claims dismissed were with or without prejudice.[23] Although a close call, he ultimately determined since the dismissals were based upon "insufficient allegations, qualified immunity, and in some cases both" he could not conclude it was "patently obvious" that amendment "would be futile."[24] The dismissals were made without prejudice and Plaintiff was given 20 days to seek leave to amend.[25] If Plaintiff were to fail to move to amend within the allotted time allowed, the Rule 12(b)(6) dismissals would convert to dismissals with prejudice.[26] Plaintiff timely filed her Motion to Amend. Defendants the City, Mayfield, and Cody ("City Defendants") filed a response in opposition.[27] Defendants

---

[15] *Id.* at 1332.
[16] *Id.* at 1316.
[17] *Id.* at 1314.
[18] *Id.* at 1324.
[19] *Id.* at 1331.
[20] *Id.* at 1330.
[21] *Id.* at 1334.
[22] *Id.* at 1338.
[23] *Id.*
[24] *Id.* (quoting Knight v. Mooring Cap. Fund, LLC, 749 F.3d 1180, 1190 (10th Cir. 2014)).
[25] *Id.* at 1338.
[26] *Id.*
[27] ECF No. 93.

Soyez and Christner filed a response;[28] they do not oppose amendment but reserve their right to raise any potential defenses that may be available under Rule 12. Plaintiff filed her reply[29] and the Motion is ripe for decision.

## II.    Plaintiff's Motion to Amend

In Plaintiff's proposed Second Amended Complaint, she primarily seeks to amend her prior claim regarding retaliation. It is not crystal clear the theory(ies) raised in this claim. Count III is titled "First Amendment Retaliation and Civil Conspiracy (42 U.S.C. 1983)." In Plaintiff's Motion, she alleges she had not sought to raise a conspiracy claim against Mayfield in her earlier complaints. Although not expressly raised in her Amended Complaint, the District Judge understood a conspiracy claim against Mayfield, Cody, and Soyez was raised. The claim against Mayfield was dismissed without prejudice. With the addition of allegations regarding a newly produced text message from Mayfield to the City Manager, Plaintiff indicates she now expressly wishes to bring a conspiracy claim against him.

The City Defendants acknowledge Plaintiff's Motion alleges she only seeks to raise a conspiracy claim against Mayfield, but reviewing the proposed Second Amended Complaint they believe there is also an intent to revive her retaliation claim against Mayfield. The Court understands the City Defendant's concern. However, having reviewed the additional facts pled in Count III which all refer either to co-conspirators or a conspiracy, the Court construes Plaintiff's Motion to seek to add a § 1983 conspiracy

---

[28] ECF No. 92.
[29] ECF No. 94.

claim against Mayfield. The District Judge's rulings regarding Plaintiff's retaliation claims remain undisturbed by the Court's ruling on this Motion.

Plaintiff, without opposition, also seeks to amend her claims in compliance with the District Court's Order by 1) removing allegations and claims regarding Defendants, the City, and the Board; 2) excluding Mayfield from Count I – her First Amendment Direct Violation claim; and 3) omitting her allegations and claims regarding the municipalities' failure to train.

## III.    Legal Standard

The standard for permitting a party to amend her pleadings is well established. A party may amend a pleading as a matter of course under Fed. R. Civ. P. 15(a)(1), either before the responding party answers or within 21 days after service of a responsive pleading. However, in cases such as this where the plaintiff has already amended her complaint, without the opposing party's consent, a party may amend its pleading only by leave of the court under Rule 15(a)(2), where leave "shall be freely given when justice so requires."

A decision to grant or deny leave to amend is within the sound discretion of the Court.[30] "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test h[er] claim on the merits."[31] "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

---

[30] *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[31] *Id.*

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"[32] Futility of amendment is adequate justification to deny leave to amend.[33] A court is "justified in denying the motion to amend if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim."[34]

A complaint must plead sufficient facts to state a claim for relief that is plausible on its face in order to withstand a motion to dismiss.[35] Well-pleaded facts are accepted as true.[36] Additionally, all reasonable inferences derived from such facts are viewed in the light most favorable to Plaintiff.[37] However, conclusory allegations without supporting facts are insufficient to state a claim.[38]

## III. Discussion

The City Defendants' response focuses on the futility of Plaintiff's § 1983 conspiracy claim. Therefore, the Court will only address the futility of Plaintiff's proposed claim. The District Judge's Order granting in part and denying in part Defendants' Motions to Dismiss Plaintiff's Amended Complaint,[39] sets forth the law regarding conspiracies under 42 U.S.C. § 1983. It provides as follows:

---

[32] *Id.*
[33] *Schepp v. Fremont Cnty.,* 900 F.2d 1448, 1451 (10th Cir. 1990) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).
[34] *Id.*
[35] *Archuleta v. Wagner,* 523 F.3d 1278, 1283 (10th Cir. 2008).
[36] *Shero v. City of Grove,* 510 F.3d 1196, 1200 (10th Cir. 2007).
[37] *Archuleta,* 523 F.3d at 1283.
[38] *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).
[39] *Zorn,* 774 F.Supp.3d at 1328.

A § 1983 " 'conspiracy claim allows for imputed liability[.]' "
*Bledsoe*, 53 F.4th at 609 (quoting *Dixon v. City of Lawton*, 898
F.2d 1443, 1449 n.6 (10th Cir. 1990)). That is, a § 1983
conspiracy theory isn't a standalone claim on which a plaintiff
may recover. It requires " 'an underlying constitutional
deprivation' " for which " 'a plaintiff may be able to impose
liability on one defendant for the actions of another performed
in the course of the conspiracy.' " *Id.* (quoting *Dixon*, 898 F.2d
at 1449 n.6). To prevail on a conspiracy theory under § 1983,
"a plaintiff must show 'at least a combination of two or more
persons acting in concert and an allegation of a meeting of the
minds, an agreement among the defendants, or a general
conspiratorial objective.' " *Frasier*, 992 F.3d at 1024 (quoting
*Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010),
abrogated on other grounds by *Torres v. Madrid*, 592 U.S. 306,
141 S.Ct. 989, 209 L.Ed.2d 190 (2021)). The general
conspiratorial objective must take the form of " 'a common,
unconstitutional goal.' " *Bledsoe*, 53 F.4th at 609 (quoting
*Janny v. Gamez*, 8 F.4th 883, 919 (10th Cir. 2021); see also
*Frasier*, 992 F.3d at 1025 ("[P]roof that defendants formed an
agreement or conspired to engage in lawful activities—
including lawful investigative activities—would be inadequate
to support a § 1983 conspiracy claim.").

But " '[c]onclusory allegations of conspiracy are insufficient
to state a valid § 1983 claim.' " *Id.* (quoting *Tonkovich v. Kan.
Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998)). Instead,
our Circuit demands specificity to plead conspiracy. "A § 1983
plaintiff must 'make clear exactly who is alleged to have done
what to whom, to provide each individual with fair notice as to
the basis of the claims against him or her, as distinguished from
collective allegations against the state.' " *Bledsoe*, 53 F.4th at
609 (emphasis in original) (quoting *Robbins*, 519 F.3d at
1250); see also *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir.
1989) (affirming dismissal of conspiracy claim where
"plaintiff failed to allege specific facts showing agreement and
concerted action among defendants").

The conspiracy allegations in the Proposed Second Amended Complaint are quite

similar to those alleged by plaintiffs in the related case of *Meyer v. City of Marion,*

*Kansas.*[40] Like the court did in *Meyer*, at this stage of the pleadings the Court finds Plaintiff has alleged a cognizable § 1983 conspiracy theory.[41] The proposed Second Amended Complaint alleges "the conspiracy had a clear goal," Defendants, including Mayfield, took "specific actions" to "carry out the plan" and Defendants Mayfield, Cody, and Soyez "participated in the conspiracy."[42] First, addressing the alleged goal of the conspiracy, the proposed Second Amended Complaint alleges the goal was to "to take down the Marion County Record."[43] It additionally alleges Mayfield, Cody, and Soyez "agreed on the common-and-unconstitutional-goal of fabricating false criminal charges and conducting an unconstitutional search and seizure against the *Record* and its employees, including the plaintiff, who were perceived enemies of the co-conspirators."[44] And finally Mayfield, Cody, and Soyez met on or around August 8, 2023, Soyez agreed to join Cody and Mayfield in their "illicit plan" to take down the Record, and Mayfield was behind Cody and "his investigation 100 percent."[45]

Second, regarding the specific actions taken to carry out the plan, Plaintiff alleges: 1) Defendants Mayfield, Cody, and Soyez as co-conspirators "conducted a sham investigation with phonied up allegations the conspirators knew were false;"[46] 2) the "sham 'investigation' was not supported by even a reasonable suspicion of a crime;"[47] 3) they

---

[40] Case No. 24-2122-DDC-GEB.

[41] *Meyer v. City of Marion, Kansas*, 776 F.Supp.3d 991, 1020 (D. Kan. 2025).

[42] *Id.* (quoting *Bledsoe v. Carreno*, 53 F.4th 589, 609-10 (10th Cir. 2022)).

[43] Proposed 2nd Am. Compl., ECF No. 94-1, ¶ 333.

[44] *Id.*

[45] *Id.* at ¶¶ 92, 95, and 332.

[46] *Id.* at ¶ 334.

[47] *Id.*

procured search warrants "knowingly or recklessly including false information in and omitting material facts from the search warrant application;"[48] and 4) the warrants were used "to raid the *Record* and the reporters that worked there in retaliation for using their First Amendment rights."[49]

Third, regarding each co-conspirator participating in the conspiracy, as in *Bledsoe v. Carreno,*[50] here "the allegations are stronger for some [Defendants] than others." Ultimately, though, the Court finds the allegations sufficient for each one of them. Plaintiff alleges Mayfield: 1) convinced Newall to "play the role of complaining victim, falsely convincing" her the Record and Plaintiff were conspiring against her;[51] 2) as the City's mayor and pursuant to Code of the City of Marion, Kan. § 1-205(a) had "superintending control of all officers and affairs of the city;"[52] 3) directed Cody to "conduct a sham 'investigation' as a pretext for his desire to retaliate against the *Record* and plaintiff;"[53] and 4) "provided Cody with Herbel's emails to use as 'evidence against Herbel and Zorn.'"[54]

The proposed Second Amended Complaint alleges Cody: 1) made false statements in the application for the search warrants;[55] 2) exceeded the scope of the warrant by

---

[48] *Id.*
[49] *Id.*
[50] 53 F.4th 589, 610 (10th Cir. 2022)).
[51] Proposed 2nd Am. Compl., ECF No. 94-1, ¶ 335.
[52] *Id.* at ¶ 305.
[53] *Id.* at ¶ 335.
[54] *Id.*
[55] *Id.* at ¶ 327.

reviewing the contents of a file on him;[56] and 3) agreed with Soyez they should "disregard the preview search requirement" and seize computers and other devices.[57]

Soyez is alleged to have: 1) assisted Cody with the investigation and in planning the raids;[58] 2) "personally participated in the decision to have all of the Record's newsroom's computers seized, even though the sham 'preview' search conducted by his own deputy found no evidence of criminal wrongdoing;"[59] and 3) tried to distance himself from the raids by telling Plaintiff "[i]t's not my search warrant; it is the PD's search warrant;"[60] and "[y]ou didn't see me over there,"[61] referring to the Record's offices.[62] The allegations in the proposed Second Amended Complaint, taken as true and viewed in the light most favorable to Plaintiff are sufficient. They state a plausible § 1983 conspiracy claim against Mayfield.

For the reasons set forth above, the undersigned Magistrate Judge **GRANTS** Plaintiff Phyllis J. Zorn's Motion To Amend Complaint **(ECF No. 90).**

---

[56] *Id.* at ¶ 263.

[57] *Id.* at ¶ 329.

[58] *Id.*

[59] *Id.* at ¶¶192 and 300.

[60] *Id.* at ¶ 190.

[61] *Id.* at ¶ 191.

[62] *Meyer*, 776 F.Supp.3d 991, 1021-22 (D. Kan. 2025) (citing *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 113 (2d Cir. 2008) ("A defendant's knowing and willing participation in a conspiracy may be inferred from .... acts exhibiting a consciousness of guilt, such as making false exculpatory statements." (quotation cleaned up)).

**IT IS THEREFORE ORDERED** Plaintiff's Motion regarding her § 1983 claim for conspiracy against Mayfield is **GRANTED** and such claim shall be permitted to proceed. Plaintiff shall file her Second Amended Complaint forthwith.

**IT IS SO ORDERED.**

Dated this 5th day of November, 2025.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
U.S. Magistrate Judge